# GUTKNECHT *v.* UNITED STATES

No. 71.   Argued  November  20,  1969—Decided  January  19,  1970

*Michael E. Tigar* argued the cause for petitioner *pro hac vice.* With him on the briefs were *Melvin L. Wulf* and *Chester Bruvold.*

*Assistant Attorney General Ruckelshaus* argued the cause for the United States. With him on the brief were *Attorney General Mitchell, Assistant Attorney General Wilson,* and *Philip R. Monahan.*

Briefs of *amici curiae* urging reversal were filed by *George Soll* and *Joseph B. Robison* for the American Jewish Congress, and by *Marvin M. Karpatkin, Michael N. Pollet,* and *E. Curry First* for the Central Committee for Conscientious Objectors.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This case presents an important question under the Military Selective Service Act of 1967, 62 Stat. 604, as amended, 65 Stat. 75, 81 Stat. 100.

Petitioner registered with his Selective Service Local Board and was classified I–A. Shortly thereafter he received a II–S (student) classification. In a little over a year he notified the Board that he was no longer a student and was classified I–A. Meanwhile he had asked for an exemption as a conscientious objector. The

Board denied that exemption, reclassifying him as I–A, and he appealed to the State Board. While that appeal was pending, he surrendered his registration certificate and notice of classification by leaving them on the steps of the Federal Building in Minneapolis with a statement explaining he was opposed to the war in Vietnam. That was on October 16, 1967. On November 22, 1967, his appeal to the State Board was denied. On November 27, 1967, he was notified that he was I–A.

On December 20, 1967, he was declared delinquent by the local board. On December 26, 1967, he was ordered to report for induction on January 24, 1968. He reported at the induction center, but in his case the normal procedure of induction was not followed. Rather, he signed a statement, "I refuse to take part, or all, [*sic*] of the prescribed processing." Thereafter he was indicted for wilfully and knowingly failing and neglecting "to perform a duty required of him" under the Act. He was tried without a jury, found guilty, and sentenced to four years' imprisonment. 283 F. Supp. 945. His conviction was affirmed by the Court of Appeals. 406 F. 2d 494. The case is here on a petition for a writ of certiorari. 394 U. S. 997.

I

Among the defenses tendered at the trial was the legality of the delinquency regulations which were applied to petitioner. It is that single question which we will consider.

By the regulations promulgated under the Act a local board may declare a registrant to be a "delinquent" whenever he

"has failed to perform any duty or duties required of him under the selective service law other than the duty to comply with an Order to Report for Induction (SSS Form No. 252) or the duty to com-

298

ply with an Order to Report for Civilian Work and Statement of Employer (SSS Form No. 153) . . . ." 32 CFR § 1642.4.

In this case, petitioner was declared a delinquent for failing to have his registration certificate (SSS Form No. 2) and current classification notice (SSS Form No. 110) in his personal possession at all times, as required by 32 CFR §§ 1617.1 and 1623.5, respectively.

The consequences of being declared a delinquent under § 1642.4 are of two types: (1) Registrants who have deferments or exemptions may be reclassified in one of the classes available for service, I–A, I–A–O, or I–O, whichever is deemed applicable. 32 CFR § 1642.12. (2) Registrants who are already classified I–A, I–A–O, or I–O, and those who are reclassified to such a status, will be given first priority in the order of call for induction, requiring them to be called even ahead of volunteers for induction. 32 CFR § 1642.13. The latter consequence deprives the registrant of his previous standing in the order of call as set out in 32 CFR § 1631.7.[1]

The order-of-call provision in use when petitioner was declared "delinquent"[2] is set out in 32 CFR § 1631.7 (a). The provision lists, in order, six categories of registrants and provides that the registrants shall be selected and ordered to report for induction according to the order of those categories. The first category is delinquents; the next category is volunteers; the other four categories consist of nonvolunteers.

---

[1] Under the terms of 32 CFR § 1631.7 (a)(1) in effect at the time of petitioner's trial, the first in line for induction were "[d]elinquents who have attained the age of 19 years in the order of their dates of birth with the oldest being selected first." That provision has been included in the new § 1631.7 (a) promulgated after the random system of selection, discussed hereafter, was adopted.

[2] The order of call provided for by 32 CFR § 1631.7 (b) concerned calls of a designated "age group or groups," a system never used.

In this case, the petitioner was in the third of the six categories at the time he was declared to be a "delinquent." By virtue of the declaration of delinquency he was moved to the first of the categories which meant, according to the brief of the Department of Justice, that "it is unlikely that petitioner, who was 20 years of age when ordered to report for induction, would have been called at such an early date had he not been declared a delinquent."

If a person, who is ordered to report for induction or alternative civilian service, refuses to comply with that order, he subjects himself to criminal prosecution. See 32 CFR §§ 1642.41, 1660.30.

There is no doubt concerning the propriety of the latter criminal sanction, for Congress has specifically provided for the punishment of those who disobey selective service statutes and regulations in § 12 of the Military Selective Service Act of 1967, 50 U. S. C. App. § 462 (1964 ed., Supp. IV). The question posed by this case concerns the legitimacy of the delinquency regulations, which were applied to the petitioner, so as to deprive him of his previous standing in the order of call.

## II

There is a preliminary point which must be mentioned and that is the suggestion that petitioner should have taken an administrative appeal from the order declaring him "delinquent" and that his failure to do so bars the defense in the criminal prosecution.

The pertinent regulation is 32 CFR § 1642.14, which gives a delinquent who "is classified in or reclassified into Class I–A, Class I–A–O or Class I–O" three rights:

(a) the right to a personal appearance, upon request, *"under the same circumstances as in any other case";*

(b) the right to have his classification reopened *"in the discretion of the local board";* and

(c) the right to an appeal *"under the same circumstances and by the same persons as in any other case."* (Emphasis added.)

The right to a personal appearance "in any other case" is covered by 32 CFR § 1624.1 (a). That section gives the right to "[e]very registrant *after his classification is determined by the local board"* provided a request is made therefor within 30 days. (Emphasis added.) The action taken against this petitioner, however, did not involve classification. The term "classification" is used exclusively in the regulations to refer to classification in one of the classes determining availability for service, *e. g.,* I–A, I–O. See 32 CFR pts. 1621–1623. "Delinquency" is not such a classification, and a registrant is "declared" a delinquent, *not* "classified" as a delinquent. See 32 CFR pt. 1642.

The right to reopen his classification is also irrelevant to petitioner as he is not attacking his classification, but only his accelerated induction.

The right to appeal "as in any other case" is covered by 32 CFR § 1626.2 (a). That section provides that "[t]he registrant . . . may appeal to an appeal board *from the classification of a registrant by the local board."* (Emphasis added.)

Again, since petitioner was not classified in conjunction with his delinquency, but only had his induction accelerated, it would mean that he did not have the right to an appeal under the regulations.[3] We are not advised, in

---

[3] Cf. *McKart* v. *United States,* 395 U. S. 185. In *McKart,* the petitioner, who challenged his I–A classification, was given a right to appeal under the regulations but failed to exercise it. This Court held that this failure did not preclude the petitioner from raising the invalidity of his I–A classification as a defense to his prosecution for refusal to report for induction. The doctrine of exhaustion of remedies, we held, was inapplicable where the question sought to be raised was solely one of statutory interpretation, *id.,*

any authoritative way, that this interpretation of the regulations is contrary to the administrative construction of them or to the accepted practice.[4]

## III

We come then to the merits. The problem of "delinquency" goes back to the 1917 Act, 40 Stat. 76, as shown in the Appendix to this opinion. The present "delinquency" regulations with which we are concerned stem from the 1948 Act, 62 Stat. 604.

The regulations issued under the 1948 Act were substantially identical to the present delinquency regulations, 32 CFR pt. 1642. Nothing in the 1948 Act or in any prior Act makes reference to delinquency or delinquents. The regulations purport to issue under the authority of § 10 of the 1948 Act. Section 10, however, relates neither to selection (§ 5) nor to deferments and exemptions (§ 6), but simply to the administration of the Act as delegated to the President: "The President is authorized—(1) to prescribe the necessary rules and regulations to carry out the provisions of this title." 62 Stat. 619.

at 197–199, and where application of the doctrine would serve to deprive a criminal defendant of a defense to his prosecution, *id.*, at 197.

[4] The Department of Justice does not suggest that a registrant who has been declared a "delinquent" has administrative remedies for a review of that action. It points out, however, that the regulations, 32 CFR § 1642.4 (c), provide that: "A registrant who has been declared to be a delinquent may be removed from that status by the local board at any time." It suggests that "at least up to the time of the issuance of the order to report for priority induction, it would be an abuse of discretion for a board to refuse removal in the case of a registrant who sought in good faith to correct his breach of duty." Whatever may be the ultimate reach of 32 CFR § 1642.4 (c), it seems to be conceded that it has little relevance to the present case where, the Department states, "the local board had solid evidence that petitioner had dispossessed himself of his draft cards."

The delinquency provisions of 32 CFR pt. 1642 survived the Military Selective Service Act of 1967 largely intact. Again, however, there is nothing to indicate that Congress authorized the Selective Service System to reclassify exempt or deferred registrants for punitive purposes and to provide for accelerated induction of delinquents. Rather, the Congress reaffirmed its intention under § 12 (50 U. S. C. App. § 462 (1964 ed., Supp. IV)), to punish delinquents through the criminal law.

It is true, of course, that Congress referred to "delinquents" in § 6 (h)(1), 81 Stat. 102, 50 U. S. C. App. § 456 (h)(1) (1964 ed., Supp. IV):

> "As used in this subsection, the term 'prime age group' means the age group which has been designated by the President as the age group from which selections for induction into the Armed Forces are first to be made *after delinquents* and volunteers." (Emphasis added.)

This reference concerns only an order-of-call provision which institutes a call by age groups, 32 CFR § 1631.7 (b), a provision which has never been used. This casual mention of the term "delinquents," moreover, must be measured against the explicit congressional provision for criminal punishment of those who violate the selective service laws, 50 U. S. C. App. § 462 (1964 ed., Supp. IV), the congressional provision for exemptions and deferments, 50 U. S. C. App. § 456 (1964 ed., Supp. IV), and congressional expressions emphasizing the importance of an impartial order of call, 50 U. S. C. App. § 455 (1964 ed., Supp. IV); H. R. Conf. Rep. No. 346, 90th Cong., 1st Sess., 9–10. Thus it was that the Solicitor General stated in his brief in *Oestereich* v. *Selective Service Board*, No. 46, O. T. 1968, 393 U. S. 233:

> "It is difficult to believe that Congress intended the local boards to have the unfettered discretion

to decide that any violation of the Act or regulations warrants a declaration of delinquency, reclassification and induction . . . ." Brief for the United States 54.

Judge Dooling stated in *United States* v. *Eisdorfer,* 299 F. Supp. 975, 989:

"The delinquency procedure has no statutory authorization and no Congressional support except what can be spelled out of the 1967 amendment of 50 U. S. C. App. § 456 (h)(1) . . . . The delinquency regulations, moreover, disregard the structure of the Act; deferments and priorities-of-induction, adopted in the public interest, are treated as if they were forfeitable personal privileges."

*Oestereich* involved a case where a divinity school student with a statutory exemption and a IV–D classification was declared "delinquent" for turning in his registration certificate to the Government in protest against the war in Vietnam. His Board thereupon reclassified him as I–A. After he exhausted his administrative remedies, he was ordered to report for induction. At that point he brought suit in the District Court for judicial review of the action by the Board. We held that under the unusual circumstances of the case, pre-induction judicial review was permissible prior to induction and that there was no statutory authorization to use the "delinquency" procedure to deprive a registrant of a statutory exemption. We said:

"There is no suggestion in the legislative history that, when Congress has granted an exemption and a registrant meets its terms and conditions, a Board can nonetheless withhold it from him for activities or conduct not material to the grant or withdrawal

of the exemption. So to hold would make the Boards free-wheeling agencies meting out their brand of justice in a vindictive manner.

"Once a person registers and qualifies for a statutory exemption, we find no legislative authority to deprive him of that exemption because of conduct or activities unrelated to the merits of granting or continuing that exemption." 393 U. S., at 237.

The question in the instant case is different because no "exemption," no "deferment," no "classification" in the statutory sense is involved. "Delinquency" was used here not to change a classification but to accelerate petitioner's induction from the third category to the first; and it was that difference which led the Court of Appeals to conclude that what we said in *Oestereich* was not controlling here.

Deferment of the order of call may be the bestowal of great benefits; and its acceleration may be extremely punitive. As already indicated, the statutory policy is the selection of persons for training and service "in an impartial manner." 50 U. S. C. App. § 455 (a)(1) (1964 ed., Supp. IV). That is the only express statutory provision which gives specific content to that phrase. That section does permit people registered at one time to be selected "before, together with, or after" persons registered at a prior time. Moreover, those who have not reached the age of 19 are given a deferred position in the order of call. But those variations in the phrase "in an impartial manner" are of no particular help in the instant case, except to underline the concern of Congress with the integrity of that phrase.

We know from the legislative history that, while Congress did not address itself specifically to the "delin-

quency" issue, it was vitally concerned with the order of selection, as well as with exemptions and deferments. Thus in 1967 a Conference Report brought House and Senate together against the grant of power to the President to initiate "a random system of selection"—a grant which, it was felt, would preclude Congress from "playing an affirmative role" in the constitutional task of "raising armies." H. R. Conf. Rep. No. 346, *supra*, at 9–10. It is difficult to believe that with that show of resistance to a grant of a more limited power, there was acquiescence in the delegation of a broad, sweeping power to Selective Service to discipline registrants through the "delinquency" device.

The problem of the order of induction was once more before the Congress late in 1969. Section 5 (a)(2) of the 1967 Act, 50 U. S. C. App. § 455 (a)(2) (1964 ed., Supp. IV), provided:

> "Notwithstanding the provisions of paragraph (1) of this subsection, the President in establishing the order of induction for registrants within the various age groups found qualified for induction shall not effect any change in the method of determining the relative order of induction for such registrants within such age groups as has been heretofore established and in effect on the date of enactment of this paragraph, unless authorized by law enacted after the date of enactment of the Military Selective Service Act of 1967."

While § 5 (a)(2) gave the President authority to designate a prime age group for induction, it required him to select from the oldest first within the group. S. Rep. No. 91–531, 91st Cong., 1st Sess., 1. The Act of November 26, 1969, 83 Stat. 220, repealed § 5 (a)(2)

pursuant to a request of the President that a random system of selection be authorized. See S. Rep. No. 91–531, *supra,* at 3–4; H. R. Rep. No. 91–577, 91st Cong., 1st Sess., 2, 9.[5] The random system has now been put in force.[6] It applies of course only prospectively. But its legislative history, as well as the concern of the Congress that the order in which registrants are inducted be achieved "in an impartial manner," emphasizes a deep concern by Congress with the problems of the order of induction as well as with those of exemptions, deferments, and classifications.

While § 5 (a)(1) provides that "there shall be no discrimination against any person on account of race or color," 50 U. S. C. App. § 455 (a)(1) (1964 ed., Supp. IV), there is no suggestion that as respects other types of discrimination the Selective Service has freewheeling authority to ride herd on the registrants using immediate induction as a disciplinary or vindictive measure.

The power under the regulations to declare a registrant "delinquent" has no statutory standard or even guidelines. The power is exercised entirely at the discretion of the local board. It is a broad, roving authority, a type of administrative absolutism not congenial to our law-making traditions. In *Kent v. Dulles,* 357 U. S. 116, 128–129, we refused to impute to Congress the grant of "unbridled discretion" to the Secretary of State to issue or withhold a passport from a citizen "for any substantive reason he may choose." *Id.,* at 128. Where the

---

[5] And see 115 Cong. Rec. H 10255 *et seq.* (Oct. 29, 1969). *Id.,* at H 10301 *et seq.,* H 10313 *et seq.* (Oct. 30, 1969). *Id.,* at S 14632 *et seq.* (Nov. 19, 1969).

[6] The random selection was established by the President through Proclamation 3945, on November 26, 1969. 34 Fed. Reg. 19017 (Nov. 29, 1969).

liberties of the citizen are involved, we said that "we will construe narrowly all delegated powers that curtail or dilute them." *Id.*, at 129. The Director of Selective Service described the "delinquency" regulations as designed "to prevent, wherever possible, prosecutions for minor infractions of rules" during the selective service processing.[7] We search the Act in vain for any clues that Congress desired the Act to have punitive sanctions apart from the criminal prosecutions specifically authorized. Nor do we read it as granting personal privileges that may be forfeited for transgressions that affront the local board. If federal or state laws are violated by registrants, they can be prosecuted. If induction is to be substituted for these prosecutions, a vast rewriting of the Act is needed. Standards would be needed by which the legality of a declaration of "delinquency" could be judged. And the regulations, when written, would be subject to the customary inquiries as to infirmities on their face or in their application, including the

---

[7] Selective Service System, Legal Aspects of Selective Service 46 (Rev. 1969).

"The escalation of the United States military involvement in Vietnam increased the draft calls, and there was an upsurge of public demonstrations in protest. Some of these protests took the form of turning 'draft' cards in to various public officials of the Department of Justice, the State or National Headquarters of Selective Service System, or directly to local boards. By agreement with the Department of Justice, registrants who turned in cards (as contrasted to those who burned cards) were not prosecuted under section 12 (a) of the Military Selective Service Law of 1967, but were processed administratively by the local boards. In many instances, the local boards determined that a deferment of such registrant was no longer in the national interest, and he was reclassified 1–A delinquent for failure to perform a duty required of him under the Act, namely retaining in his possession the Registration Card and current Notice of Classification card." *Id.*, at 47.

question whether they were used to penalize or punish the free exercise of constitutional rights.

*Reversed.*

Mr. Chief Justice Burger concurs in the result reached by the Court generally for the reasons set out in the separate opinion of Mr. Justice Stewart.

Mr. Justice White joins the opinion of the Court insofar as it holds that Congress has not delegated to the President the authority to promulgate the delinquency regulations involved in this case.

### APPENDIX TO OPINION OF THE COURT

Under the Selective Service Act of 1917, 40 Stat. 76, if a registrant failed to return his questionnaire or to report for physical examination, he was mailed a special order directing him to report for military service at a specified time. The registrant became a member of the service on the date specified in his order; any refusal to obey that order subjected him to prosecution under military law for desertion. "Since in most instances the delinquent registrant would never receive the order, due to not being in contact with his local board, he would normally acquire the status of a deserter without having any actual knowledge of his induction." Selective Service System, Enforcement of the Selective Service Law 13 (Special Monograph No. 14, 1950). Thus, enforcement of the 1917 Act rested principally with the military, with court-martial being the main weapon of enforcement.

In passing the Selective Training and Service Act of 1940, 54 Stat. 885, Congress specifically ended the practice of subjecting delinquent registrants to military jurisdiction immediately upon receipt of their orders to report. Rather, § 11 of the Act provided that no registrant should be tried in a military court for disobeying

selective service laws until he had been actually inducted, vesting criminal jurisdiction until such time in the United States district courts.

No mention was made in the 1940 Act of "delinquency" or "delinquents." These terms were first introduced by the Selective Service regulations issued under the Act, 32 CFR, c. VI (Supp. 1940), which prescribed various duties for registrants and defined a "delinquent" as one who failed to perform them:

"A 'delinquent' is . . . (b) any registrant who prior to his induction into the military service fails to perform at the required time, or within the allowed period of given time, any duty imposed upon him by the selective service law, and directions given pursuant thereto, and has no valid reason for having failed to perform that duty." 32 CFR § 601.106 (Supp. 1940).

Furthermore, the regulations provided definite procedures for processing delinquents: after giving them notice of their suspected delinquency, 32 CFR § 603.389 (Supp. 1940), and after investigating those suspected charges, 32 CFR § 603.390 (Supp. 1940), the Selective Service System provided for two possible dispositions:

On the one hand—

"If the local board is convinced that a delinquent is not innocent of wrongful intent, or if a suspected delinquent does not report to the board within 5 days after the mailing of the Notice of Delinquency . . . , the board should report him to a United States District Attorney for prosecution under section 11 of the Selective Service Act." 32 CFR § 603.391 (a) (Supp. 1940).

On the other hand—

"If the board finds that the suspected delinquent is innocent of any wrongful intent, the board shall

proceed with him just as if he were never suspected of being a delinquent." 32 CFR § 603.390 (a) (Supp. 1940).

The February 1942 amendments to the regulations added a provision by which local boards would advise the United States Attorney in the exercise of his discretion not to ·prosecute those who had violated the selective service laws:

"If it is determined that the delinquency is not wilful, or that substantial justice will result, the local board should encourage the delinquent to comply with his obligations under the law and, if he does so or offers to do so, should urge that any charge of delinquency against him or any prosecution of him for delinquency be dropped." 32 CFR § 642.5 (Cum. Supp. 1938–1943).

This process was called the "enforcement procedure of education and persuasion." Selective Service System, Enforcement of the Selective Service Law, *supra,* at 1–3.

"The first steps of the board were to try educating and persuading [the delinquent] to comply, but if such failed his case was referred to the United States attorney for further education and persuasion or if such also failed, for prosecution." Selective Service System, Organization and Administration of the System 241 (Special Monograph No. 3, 1951).

If it was determined that the delinquency was "wilful" or that for any reason the United States Attorney should not exercise his discretion not to prosecute, the registrant was given an opportunity to avoid prosecution by "volunteering" for induction.

"[T]he registrant could volunteer for induction from any classification, not just I–A, any time he so de-

sired, and if he was a delinquent under prosecution such volunteering was often allowed from any stage of the proceedings." *Ibid.*

This procedure made it possible for the boards to siphon into military service some delinquents who might otherwise have traveled to jail:

"Since the purpose of the [selective service] law is to provide men for the military establishment rather than for the penitentiaries, it would seem that when a registrant is willing to be inducted, he should not be prosecuted for minor offenses committed during his processing." Selective Service System, Legal Aspects of Selective Service 47 (Rev. 1969).

In November 1943, a new and substantially different set of regulations was issued. These regulations did not rely upon a delinquent's "volunteering" for induction; instead they provided for reclassification of deferred or exempted delinquents into classes available for service, 32 CFR § 642.12 (a) (Supp. 1943), and provided for their priority induction without regard to the order of call established elsewhere in the regulations, 32 CFR § 642.13 (a) (Supp. 1943).

A deferred or exempted registrant who was reclassified into a class available for service was accorded the procedural rights of personal appearance and appeal to which he would otherwise have been entitled. 32 CFR § 642.14 (a) (Supp. 1943). In the case of a registrant who was not reclassified as a result of his delinquency, the local board could "reopen" the classification and accord rights of personal appearance and appeal "at any time before induction." 32 CFR § 642.14 (b) (Supp. 1943). If the local board determined that the registrant "knowingly became a delinquent," however,

it was directed to decline to reopen the registrant's classification. *Ibid.*

With respect to those registrants who were given appeal rights under § 642.14, the appeal board would determine if they had "knowingly" become delinquents. If they had, they were to be retained in a class available for service. If they had not, they were to be "classified on appeal in the usual manner" and their status as delinquents was to be "disregarded." 32 CFR § 642.14 (c) (Supp. 1943).

The purpose of these regulations was *"to prevent delay* in the induction of apprehended delinquent registrants." Selective Service System, Enforcement of the Selective Service Law, *supra,* at 56 (emphasis added). More important, the Service recognized that the procedure had little to do with the statutory exemptions delineated by Congress but, rather, was punitive in nature:

> "[T]he Selective Service Regulations concerning delinquents . . . were amended again on November 1, 1943 . . . . The purposes of these changes were . . . *To provide for the administrative penalty to a delinquent* of prompt classification into Classes I–A, I–A–O or IV–E as available for service, *in addition to the existing criminal sanction."* (*Ibid.*) (Emphasis added.)

The regulation of November 1, 1943, purportedly drew its authority from § 3 of the 1940 Act, 54 Stat. 885. Nothing in that section, however, gives the Service powers of punitive reclassification and accelerated induction. Moreover, to the extent that § 3 has been so construed, it would conflict with the spirit of § 4 (a):

> "The selection of men for training and service under section 3 . . . shall be made in an impartial manner, under such rules and regulations as the President

may prescribe, from the men *who are liable for such training and service* and who at the time of selection are registered and classified *but not deferred or exempted."* 54 Stat. 887 (emphasis added).

The delinquency provisions under the 1940 Act expired on March 31, 1947. The provisions issued under the 1948 Act are discussed in the text, *supra.*

MR. JUSTICE HARLAN, concurring.

I join the Court's opinion with the following observations. First, as I see it, nothing in the Court's opinion prevents a selective service board, under the present statute and existing regulations, from classifying as I–A a registrant who fails to provide his board with information essential to the determination of whether he qualifies for a requested exemption or deferment. Section 1622.10 of 32 CFR provides that: "In Class I–A shall be placed every registrant who has failed to establish to the satisfaction of the local board, subject to appeal hereinafter provided, that he is eligible for classification in another class." I assume, of course, that under this regulation a board has no authority to keep a registrant classified I–A once it has information that justifies some lower classification.

Second, I think it entirely possible that consistently with our opinion today the President might promulgate new regulations, restricted in application to cases in which a registrant fails to comply with a duty essential to the classification process itself, that provide for accelerated induction under the existing statute. However, in order to avoid those punitive features now found to be unauthorized under existing legislation, any new regulations would have to give to a registrant being subjected to accelerated induction the right (like a person held in civil contempt) to avoid any sanction by future com-

pliance. In other words, while existing legislation does not authorize the use of accelerated induction to punish past transgressions, it may well authorize acceleration to encourage a registrant to bring himself into compliance with rules essential to the operation of the classification process.

MR. JUSTICE STEWART, concurring in the judgment.

I do not reach the question whether Congress has authorized the delinquency regulations, because even under the regulations the petitioner's conviction cannot stand. After the petitioner's local board declared him delinquent, he had 30 days as a matter of right to seek a personal appearance before the board and to take an appeal from its ruling. Yet the board gave him no chance to assert either of those rights. Instead, it ordered him to report for induction only five days after it had mailed him a notice of the delinquency declaration.

The local board thus violated the very regulations it purported to enforce. Those provisions seek to induce Selective Service registrants to satisfy their legal obligations by presenting them with the alternative prospect of induction into the armed forces. The personal appearance and appeal are critical stages in the delinquency process. They enable the registrant declared delinquent by his local board to contest the factual premises on which the delinquency declaration rests, to correct his oversight if the breach of duty has arisen merely from neglect, or to purge himself of his delinquency if his violation has been wilful. In any event, the regulatory objective is remedial. The board's authority to reclassify a registrant based on his delinquency and to accelerate his induction is analogous to the age-old power of the courts to pronounce judgments of civil contempt. In each case the subject of the order carries "the keys . . .

in [his] own pocket" to the termination of the order's effect.[1]

The Government has advanced the civil-contempt analogy, not only in this case, but also in others before the Court both this Term and last.[2]  Such an interpretation of the delinquency regulations comports with the view of the agency charged with their administration—that their purpose is to provide young men for the armed services, not the penitentiaries.[3]  It comports, as well, with the regulatory scheme itself, under which the local board may reopen its classification of a delinquent registrant without regard to the usual restrictions against such action,[4] and remove the registrant from delinquency status at any time, even after it has ordered him to report for induction.[5]

---

[1] Cf. *Shillitani* v. *United States*, 384 U. S. 364, 368–372; *Green* v. *United States*, 356 U. S. 165, 197–198 (BLACK, J., dissenting); *Penfield Co.* v. *SEC*, 330 U. S. 585, 590; *United States* v. *United Mine Workers*, 330 U. S. 258, 330–332 (BLACK and DOUGLAS, JJ., concurring in part and dissenting in part).

[2] The Government has spelled out the analogy in its briefs in *Oestereich* v. *Selective Service Local Bd. No. 11*, 393 U. S. 233; *Breen* v. *Selective Service Board*, No. 65, O. T. 1969, awaiting decision; *Troutman* v. *United States*, No. 623, O. T. 1969, cert. pending; and the present case.  See also Griffiths, Punitive Reclassification of Registrants Who Turn in Their Draft Cards, 1 Sel. Serv. L. Rep. 4001, 4010–4012.

[3] Selective Service System, Legal Aspects of Selective Service 47 (Rev. 1969).

[4] 32 CFR § 1642.14 (b); cf. 32 CFR § 1625.2.

[5] 32 CFR § 1642.4 (c).  Of similar import is the board's authority, before notifying the local United States Attorney that a registrant has failed to report for induction, to wait 30 days if it believes it may be able to locate the registrant and secure his compliance. 32 CFR § 1642.41 (a).

The civil-contempt interpretation draws further support from the historical development of the law of Selective Service delinquency. In the First World War, one who failed to fill out his questionnaire

Accordingly, even though the regulations seem to say that such reopening and removal lie within the discretion of the local board,[6] the Government agrees that the board would abuse its discretion if it refused such remedial relief to a registrant who breached his duty inadvertently or carelessly, or who sought to correct the breach, even if originally wilful, and to return to compliance with his obligations.[7]  But the Government

---

was simply inducted into the military, and his failure to report for duty led to a court-martial for desertion.  See *United States ex rel. Bergdoll* v. *Drum,* 107 F. 2d 897, 899.  By the Second World War, when the precursor of the present delinquency regulations first appeared, 32 CFR §§ 601.106, 603.389–603.393 (Supp. 1940), the law provided compliance procedures for registrants who offered to satisfy their obligations, even after their boards had referred their cases to the United States Attorneys for prosecution.  32 CFR § 642.5 (Cum. Supp. 1938–1943).  However, from 1943 on, the regulations required denial of reopenings for knowingly delinquent registrants.  32 CFR § 642.14 (b) (Supp. 1943).  Under the present regulations even a registrant whose delinquency is wilful may redeem himself before his local board.  Surely this historical progression demonstrates that whatever may have been the punitive nature of the draft law's initial response to the delinquency problem, its present character is remedial: recalcitrant registrants are handled in civilian rather than military proceedings, and receive an opportunity to recant even where their dereliction has been deliberate.

Such an understanding of the delinquency regulations underlies recent decisions in the federal courts, *e. g., Wills* v. *United States,* 384 F. 2d 943, 945–946, cert. denied, 392 U. S. 908; *United States* v. *Bruinier,* 293 F. Supp. 666, including those upholding the constitutionality of the regulations, *e. g., Anderson* v. *Hershey,* 410 F. 2d 492, 495–496 n. 10, 498 nn. 15–16, 499, No. 449, cert. pending; cf. *United States* v. *Branigan,* 299 F. Supp. 225, 236–237; but see *United States* v. *Eisdorfer,* 299 F. Supp. 975, 984–989, app. docketed, No. 330, O. T. 1969.

[6] See 32 CFR §§ 1642.4 (c), 1642.14 (b).

[7] The Government qualifies its interpretation by implying that a local board might not abuse its discretion in refusing removal in the case of a registrant who sought in good faith to correct his breach

argues that in this case the petitioner cannot avail himself of these provisions in the delinquency regulations, because he made no effort to correct his delinquency. The fact is that the petitioner's local board never gave him a chance to purge his delinquency. It declared him a delinquent on December 20, 1967, sent him a notice to that effect the next day, and five days later ordered him to report for induction, more than two weeks before the expiration of the petitioner's time to seek a personal appearance or take an appeal.[8] In these circumstances the petitioner's failure to seek his local board's advice on what he should do, as suggested by the delinquency notice, does not detract from the force of his attack upon the validity of his criminal conviction.[9]

The Government also argues that the petitioner was not prejudiced by the local board's departure from the prescribed regulatory routine because when he was declared delinquent he was already classified I–A. But the Court of Appeals noted that the petitioner's induction date was advanced as a result of the declaration,[10] and the Government concedes that since the petitioner was only 20 years old at the time, it is unlikely that he would

---

of duty *after* the board had issued its order to report for induction. But that limitation has no application in the present case, where the local board improperly issued the order to report before the petitioner had a chance to bring himself into compliance. In *Troutman* v. *United States, supra,* where the Solicitor General has conceded that the local board erred in refusing to remove the petitioner's delinquency after he sought to bring himself into compliance with his Selective Service duties, nearly six months intervened between the board's declaration of delinquency that the petitioner sought to cure and its order to report for induction that gave rise to the prosecution for failure to submit to induction.

[8] 32 CFR §§ 1642.14, 1624.1 (a), 1624.2 (d), 1626.2 (c) (1).

[9] Cf. *McKart* v. *United States,* 395 U. S. 185, 197.

[10] 406 F. 2d 494, 496.

have been called at such an early date had he not been declared a delinquent. That the petitioner might eventually have been called—by no means a certainty, given the variations in draft calls and the possibility that he might subsequently have qualified for a deferment or exemption—does not mean he cannot complain that he was ordered to report for induction earlier than he should have been.[11]

Finally, it is said that the petitioner had no right to a personal appearance before the local board and an appeal from its ruling because its delinquency declaration did not entail his removal into Class I–A from some other category. Since the petitioner was already I–A, the argument runs, his local board never "reclassified" him; it just shifted him from a lower to the highest category within the I–A order of call.[12] Neither logic nor policy supports such a narrow reading of the regulations. Section 1642.14 specifically provides for a personal appearance and appeal, not only upon a "reclassification into" I–A, but also upon a "classification in" that category.[13] The regulation thus covers precisely those registrants who are already "classified in" Class I–A, and whose declaration of delinquency automatically elevates them to the head of the order of call, as well as those registrants who are not yet in I–A, and who must be "reclassified into" that category before they can be put at the top of the list. The regulation, recognizing that the status of the registrant prior to his being declared delinquent and placed at the head of the order of call is

---

[11] *United States* v. *Baker*, 416 F. 2d 202, 204–205; *Yates* v. *United States*, 404 F. 2d 462, 465–466, rehearing denied, 407 F. 2d 50, cert. denied, 395 U. S. 925; *United States* v. *Smith*, 291 F. Supp. 63, 67–68; *United States* v. *Lybrand*, 279 F. Supp. 74, 77–83.

[12] See 32 CFR § 1631.7 (a).

[13] Cf. 32 CFR §§ 1642.12, 1642.13.

irrelevant to the delinquency process, ensures that all registrants declared delinquent will enjoy the same rights of personal appearance and appeal without regard to their previous status.

Because the challenged regulations afford the petitioner procedural rights that his local board never gave him a chance to exercise, I would reverse the judgment of conviction.