UNITED STATES of America
v.
Richard Ellet GIBBONEY.
Crim. No. 15–70–R.

United States District Court,
E. D. Virginia,
Richmond Division.
June 14, 1971.

Justin W. Williams, Asst. U. S. Atty., Alexandria, Va., for plaintiff.

Alan Dranitzke, Washington, D. C., for defendant.

## MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

In an extensive nonjury trial many defenses are raised to the charge of failing to report for induction on or about October 28, 1969, in violation of 50 App. U.S.C. § 462. Reaching the conclusion that the Government has fully proven its case beyond a reasonable doubt, the defendant is found to be guilty as charged.

Expressly abandoned by the defendant are the contentions that (1) the defendant was not delinquent, (2) the postponement of defendant's induction by the clerk, rather than by vote of the Local Board, was error, and (3) the Local Board was invalidly constituted. The defendant also agrees that objections to the admissibility of the defendant's file are moot.

The defendant's Local Board was in New Jersey. The file was subsequently transferred to Virginia at the request of the defendant, where the induction notice was issued.

On August 27, 1968, the defendant was mailed his order to report for induction. He had failed to advise his Local Board as to his whereabouts and apparently did not receive the notice. It was not until January 25, 1969, that the defendant advised the New Jersey Board of an Arlington, Virginia, address. On May 12, 1969, he was directed to report for induction on May 28, 1969. Because of facts hereinafter related, defendant's actual induction was postponed until he was finally directed to report on October 28, 1969, at Richmond, where he refused to be inducted.

Defendant, by communication dated May 16, 1969, received May 19, 1969, by Local Board No. 14 in New Jersey, requested SSS Form 150, a special form for conscientious objectors. Gibboney was requested to complete Form 150 by the date of his personal appearance on June 11, 1969. In the interim his induction date of May 28, 1969, was postponed. He never indicated any difficulty in completing the form; nor did he request additional time. Although counsel for defendant urges that Gibboney was entitled to a 30 day period to complete the form, we find no merit to this contention as Gibboney actually presented his 70-page Form 150 to the Board on June 11, 1969.

■■ While many authorities could be cited supporting the Government's position that a minimum of 30 days is not required and, even if required, does not constitute a fatal procedural error, we think that all of the discussion relating to the defendant's claim that he was entitled to a conscientious objector classification is foreclosed by the recent case of Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), which case was awaiting argument and decision when the Gibboney case was argued. Ehlert has now settled the principle as to the timeliness of a claim as a conscientious objector. Since Gibboney's initial claim as a conscientious objector was received after the issuance of two orders to report for induction, and after the actual receipt of at least one of said orders, it was not incumbent upon the Local Board to state

its reasons for the denial of a post-induction notice conscientious objector claim. United States v. James, 417 F.2d 826 (4 Cir. 1969), and United States v. Broyles, 423 F.2d 1299 (4 Cir. 1970), are inapposite. It is true that Scott v. Commanding Officer, 431 F.2d 1132 (3 Cir. 1970), supports the defendant's argument that reasons must be stated by the Local Board in refusing to reopen when a post-induction notice of a purported conscientious objector is received, but *Scott* was decided without the benefit of *Ehlert,* and we find it unpersuasive. It would be an idle gesture to require draft boards to analyze and state the reasons for any denial of a request to reopen, when all that need be done is to say to the registrant: "You are too late."

The argument that draft boards must reopen in certain situations, Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970), is equally answered by *Ehlert.* What the draft board *may* do by way of reopening, and what it *must* do, are two different approaches to the subject matter. However, in United States v. Nordlof, 440 F.2d 840 (7 Cir. 1971), there is some doubt as to whether the local board may consider the sincerity of the registrant's beliefs in determining whether to reopen the classification where the claim for conscientious objector status is not made until after receipt of an order to report for induction.

We also feel that *Ehlert* has done away with defendant's argument that there was a *de facto* reopening of Gibboney's classification and, therefore, the induction order in invalid. The mere fact that the Local Board questioned Gibboney is not tantamount to a *de facto* reopening. If such is the law, registrants, once having received an order to report for induction, could never be interrogated. This point is frivolous. Nor do we believe that there is merit to the argument that a *de facto* reopening occurred, even assuming that the order to postpone induction did not emanate from the State Director. Defendant cannot be heard to complain merely because the Board granted him a personal appearance. Any technical violation of the procedure cannot operate to render the induction order a nullity; nor does it reopen the classification.

Defendant next contends that he attempted to appeal the decision of the Local Board in declining to reopen his classification, but was denied this "right." In United States v. Bowen, 421 F.2d 193, 197 (4 Cir. 1970), the Fourth Circuit said: "No right of appeal arises from a failure to reopen a classification." In addition to the reasoning assigned in *Bowen,* we should point out that, if such an appeal is a "right," the matter would continue for an indefinite period as the registrant would repeatedly request a reopening of his classification. There is no merit to defendant's argument on this point. The legislative history cited by counsel for defendant is not applicable to situations here presented.

We believe it is abundantly established that Gibboney was mailed the final I–A classification notice to the last address given by him. Gibboney elected not to testify which, as we know, was within his rights and no adverse inferences can be drawn therefrom. He admittedly knew that, on May 25, 1967, he had been classified as II–A *until May 1, 1968* by Appeal Board Panel #2 for New Jersey. He had given an address of Spring Grove State Hospital, Baltimore, Maryland, but had used "Baltimore" and "Catonsville" interchangeably. The I–A classification notice of June 21, 1968 was mailed to Gibboney at Spring Grove State Hospital, Box 126, Catonsville, Maryland. This was returned marked "Moved. Left no address." It was remailed to Gibboney at his original home address, 13 North Crescent, Maplewood, New Jersey. This was returned stamped "Moved. Left no address." It was again sent to Spring Grove State Hospital, Box 126, Cantonsville, Md., with a return indicating "No forwarding address" and "Moved. Left no address." On October 10, 1968, an-

other effort was made to communicate with Gibboney by addressing him at "Box 126, Spring Grove State Hospital, Baltimore, Maryland 21228." This letter was returned marked "Moved. Current address unknown." Mail addressed to Catonsville, a suburb of Baltimore, would have definitely reached the Spring Grove State Hospital according to all postal testimony. Since there is no contention that Gibboney gave any address other than as stated above, the Local Board complied with procedural requirements in mailing the I-A classification notice to Gibboney at his last stated address. In effect, Gibboney wishes to impose upon the Selective Service System the obligation of keeping up with his whereabouts when he left no forwarding address with the postal authorities, he failed to advise the Local Board that he had left Spring Grove State Hospital, and well knew that he was scheduled for a change of classification on any date after May 1, 1968.

The argument that the Local Board failed to read and properly consider the 70-page request to reopen and classify Gibboney as a conscientious objector also falls by the weight of *Ehlert*. Gibboney was interviewed during a four-hour session on June 11, 1969, but the record does not disclose how long the interview lasted as there were 13 other interviews that same night. Defendant would have us apportion the 57 decisions made on that day, thus averaging 4 minutes per case. We know, of course, that many of these decisions were routine classifications. The time consumed on personal appearances ranged from 5 to 20 minutes per case. While it is our opinion that *Ehlert* forecloses this defense, we are unwilling to make any finding that the Local Board failed to give proper consideration to Gibboney's request. The notations on the personal appearance form would indicate otherwise.

It is argued that procedural error occurred because the Local Board did not afford the defendant an opportunity to meet with the Government Appeal Agent. Once again, it appears that this contention is shattered by *Ehlert*. The request, dated June 10, 1969 and received on the same day as the defendant's personal interview, came many months after the I-A classification and subsequent to the order to report for induction. Moreover, defendant insisted that his privately employed attorney meet with the Appeal Agent and the defendant. Such an arrangement was contrary to the practices, if not the regulations, of the Board. The attorney had, by written communications to the Local Board, insisted that the Local Board had failed to comply with procedural requirements. Additionally, the Government Appeal Agent renders his service to registrants receiving notices of classification and not to post-induction requests to reopen. As stated in *Bowen*, since there is no right of appeal from a refusal to reopen, the services of a Government Appeal Agent would be meaningless. As late as May 2, 1969 Gibboney signed a form requesting a duplicate notice of classification indicating that SSS Form 110 (Notice of Classification) had been received by him, but had been lost. He was immediately issued a duplicate notice of classification which advised Gibboney of his appeal rights and the availability of the Government Appeal Agent. While we do not hold that Gibboney had any right of appeal upon receipt of the duplicate notice of classification, we think it to be singularly strange that he waited until after his privately employed attorney entered the picture before requesting the services of the Appeal Agent, and then only in company with his attorney. United States v. Davis, 413 F.2d 148 (4 Cir. 1969), is inapposite.

Counsel for defendant had issued a subpoena duces tecum for the Executive Secretary of Local Board No. 14, Newark, New Jersey, to appear on August 6, 1970, at Richmond, Virginia, and to bring with her the Local Board's classification records for the years 1942, 1943, 1944 and 1945. The subpoena was requested and issued on Tuesday, Au-

gust 4, returnable Thursday, August 6. Apparently the Executive Secretary had received the subpoena duces tecum on Tuesday afternoon at 4:30 p. m., although it is difficult to believe that the subpoena could have been issued on Tuesday morning in Richmond, Virginia, and served that same afternoon in Newark, New Jersey. The requested records were contained in large ledgers weighing approximately 5 pounds each. In any event, the trial proceeded and, at a later date, extensive testimony was introduced relating to these records.

■ The purpose of such records, which should have been produced or examined well in advance of trial pursuant to the liberal discovery available under the Federal Rules of Criminal Procedure, was to demonstrate that the defendant's induction was accelerated in violation of Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970). Actually we do not believe that *Gutknecht* is apposite as the defendant was never classified as a *delinquent* until he refused to submit to induction. Extensive testimony was received as to the "order of call." While the Court entertains serious doubts as to the admissibility of such evidence as, if required, it will impose a burden in these cases which may well make a trial by jury so prolonged that it will unduly delay the administration of justice, yet the evidence discloses that, in each of the 55 files of registrants examined, with one exception, there were valid reasons why the registrants, older than Gibboney, were not called ahead of him as of August 27, 1968, when defendant was first ordered for induction. The explanation for the one exception was that the registrant's file had been misplaced for several months and, in any event, Gibboney was not prejudiced as there were five younger men called on August 27, 1968.

Despite the foregoing, the defendant insists that the prosecution must go further when the issue is raised as to an improper order·of call. It is urged that Local Board No. 14 should have drafted "new mental standards" (formerly I–Y registrants) but the Board did not do so unless so instructed by the New Jersey State Selective Service Headquarters. In answer, the Government points to United States v. Weintraub, 429 F.2d 658, 660–661 (2 Cir. 1970), which approves the separate call procedure. Next, the Local Board always drafted the number specified by State Headquarters "plus available delinquents" but allegedly did not include delinquents in filling the call for the specific number of inductees. Since the "available delinquents" should have been counted in a prior call, this procedure cannot prejudice the defendant. Finally, the Local Board never drafted registrants with reopening requests pending. Since the Board had an inherent right to reopen, it follows that there is an equivalent right to postpone the actual induction. These three issues were injected into the trial toward the end of three separate days. A continuance was granted after the two-day trial on August 6–7, 1970, to permit defendant's counsel to explore the "order of call" procedure involving 55 names. It was finally agreed that the hearing on the "order of call" would be conducted at Norfolk on September 9, 1970. The Executive Secretary appeared with the files involving the 55 registrants and testimony was adduced as to the particular reason why each registrant, older than Gibboney, was not called ahead of him. After the Executive Secretary was questioned at length, she was recalled for the purpose of proving that there were five registrants on the call of August 27, 1968 who were younger than Gibboney. Defendant's counsel, on cross-examination, then proceeded to question the witness generally, but not as to a particular registrant, as to "former I–Y" registrants. The files, other than the 55 requested by defendant, were in Newark, New Jersey. The Court sustained the Government's objection under the circumstances.

If there is an affirmative duty on the Government to prove, with exactitude, the order of call, it would be necessary

to revert to World War II days as the draft has been continuously in existence since that time. Moreover, if this is required in each prosecution for draft evasion, there could never be a prosecution, much less a conviction. The technicalities advanced by defense counsel must be rejected by the Court, although it must be said that no defendant has been more ably represented.

▮ Complaint is made that Gibboney was examined by a Dr. Collins who had only completed 13 months of a 36-month program as a resident psychiatrist at the Medical College of Virginia. The contention is that the standard requires one "trained and practicing" in the field of psychiatry. Dr. Collins had previously completed medical school and his internship. We need not pass upon the issue as to whether the psychiatric evaluation at the AFEES is limited to profiling purposes. We think it sufficient to state that a resident in psychiatry is sufficiently "trained and practicing" in his field to meet the standard. Resident surgeons operate on patients during their residency, and the mere fact that a doctor may not be legally qualified to practice in Virginia at a particular point of time does not, standing alone, make him "untrained and non-practicing." Aside from the foregoing, the AFEES has two letters from defendant's personal psychiatrist which were reviewed and, prior to induction, all medical records were reviewed by the head of the Army Recruiting Command.

▮ Finally, defendant says that the Local Board's denial of the request to permit defendant's privately employed counsel to appear with defendant on June 11, 1969, was a denial of due process. The answer lies in United States v. Dicks, 392 F.2d 524, 528 (4 Cir. 1968), and is contrary to defendant's position.

There can be no question that the defendant acted "willfully, unlawfully and knowingly." Reliance upon the advice of counsel in this type of situation, under the facts here presented, and so-called "sincere beliefs," are to no avail.

United States v. Moylan, 417 F.2d 1002, 1004 (4 Cir. 1969); United States v. Valentine, 288 F.Supp. 957, 987 (D.C. Puerto Rico 1968); United States v. Spiro, 384 F.2d 159, 160–161 (3 Cir. 1967), cert. den. 490 U.S. 956, 88 S.Ct. 1028, 19 L.Ed.2d 1151; Silverman v. United States, 220 F.2d 36, 39–40 (8 Cir. 1955). And the only indication of reliance upon advice of counsel is a letter written by Gibboney. We think that this point is devoid of merit.

The defendant is adjudged to be guilty as charged in the indictment.