**UNITED STATES of America,**
**Appellee,**

v.

**Paul Bernard COUMING, Appellant.**

**No. 71–1064.**

United States Court of Appeals,
First Circuit.

Argued June 25, 1971.

Heard June 7, 1971.

John G. S. Flym, Cambridge, Mass., for appellant.

Richard E. Bachman, Asst. U. S. Atty., with whom Herbert F. Travers, Jr., U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, and McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Defendant was convicted in district court of violating 50 U.S.C. App. § 462:

"Any member of the Selective Service System or any other person charged as herein provided with the duty of carrying out any of the provisions of this title, or the rules or regulations made or directions given thereunder, who shall knowingly fail or neglect to perform such duty * * * shall, upon conviction in any district court

of the United States of competent jurisdiction, be punished * * *."

Specifically, defendant was charged with failing to have his Registration Certificate and his Notice of Classification in his personal possession. Selective Service Regulations, 32 CFR §§ 1617.1, 1623.5 provide that a registrant "must have" these two documents.

■ On appeal, appellant offers three reasons for reversal. He claims, first, that before he could be prosecuted, his local board was compelled to declare him delinquent pursuant to 32 CFR § 1642.4 and to give him an opportunity to cure his delinquency. The short answer to appellant's argument, is that at the time of appellant's indictment, the delinquency regulations had been declared void by the Supreme Court. In Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970), the Court ruled that there was no Congressional authorization for the delinquency regulations and that "delinquents" were to be punished through the criminal law. 396 U.S. at 307, 90 S.Ct. 506. We reject appellant's claim that he was entitled to be processed under this void procedure.

■ Next, appellant spins an intricate web, based on statutory and regulatory history, in support of his assertion that failure to possess a Registration or Classification card is not punishable under 50 U.S.C. App. § 462. Although the regulations at one time provided that non-possession of a Registration Certificate violated the regulations, in 1942 they were changed to provide only that non-possession was prima facie evidence of a failure to register. The early regulations requiring possession of the Classification Notice were concerned with preventing fraudulent use of Classification cards and were silent on the effect of non-possession. Congress never specifically made non-possession a crime, and appellant argues that this regulatory history proves that non-possession was never intended to be a crime. *See* Dranitzke, Possession of Registration Certificate and Notices of Classification

by Selective Service Registrants, 1 SSLR 4029 (1968).

Whatever may have been the original concern of the regulations, of more relevance are the facts that the statute, 50 U.S.C. App. § 462, punishes the knowing failure to perform a duty under the regulations and that the regulations, 32 CFR §§ 1617.1, 1623.5, say that a registrant "must have" his Registration and Classification cards. The provisions do not conflict with the other regulations concerning non-possession whose history appellant so sedulously relates. Therefore, to prove successful, appellant must show why possession is not a "duty" imposed by the regulations. In the final analysis, appellant's argument is that the regulations providing that a registrant "must . have" his Classification card and his Registration card are mere exercises in rhetoric. The fact the regulations do not use the words "duty" or "shall" in no way mitigates the force of the requirement that a registrant carry his Registration and Classification cards. This requirement creates a duty. Therefore, the statute and regulations, on their face, make non-possession a crime, and the regulatory history does not contradict this purpose.

Defendant's final claim centers on the district court's charge on the element of criminal intent required for conviction. The statute uses the word "knowingly" but the indictment used "unlawfully, knowing and wilfully". The district court charged:

"The question is whether the defendant knowingly violated the regulation by not having in his possession the registration certificate. Now 'knowingly' means, in spite of the argument addressed to you, deliberately, intentionally, fully aware of what he was doing. It is not part of the government's burden to prove that he had a corrupt or wicked motive. It is not part of the government's burden to prove that he was in the ordinary sense of the word a man who was wickedly criminal. Men may for perfectly good motives intentionally vio-

late a statute. But if the statute says that one who violates it knowingly is guilty his motives are not relevant." Defendant made no objection to this language. Thus, we may reverse only if the district court's charge was plain error. F.R.Crim.P. 52(b). According to defendant, the error lies in the court's failure to charge as to the meaning of "wilfully". He says that the element of wilfulness is inherent in the offense with which he was charged.

 We disagree with defendant's attempt to assign talismanic characteristics to the word "wilfully". "Knowingly" and "wilfully" are equally acceptable methods of expressing the mental element of the offense charged. See Morissette v. United States, 342 U.S. 246, 264, 72 S.Ct. 240, 96 L.Ed. 288 (1952); Screws v. United States, 325 U.S. 91, 102, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). For the most part, defendant's objection to the district court's omission of "wilfulness" from its charge stems from his belief that the word has the precise definition quoted in United States v. Krosky, 418 F.2d 65, 67 (6th Cir. 1969):

> "An act is done 'wilfully' if done voluntarily and purposefully with the specific intent to do that which the law forbids; that is to say, with bad purpose either to disobey or to disregard the law. Wilfulness includes an evil nature."

The error in defendant's position, and, we think, in the Sixth Circuit's opinion in *Krosky* lies in assuming the indispensability of the words "bad purpose" or "evil nature".* As the trial court correctly charged, it is not essential to prove that the defendant had "a corrupt or wicked nature"; if it was shown that he knew the requirements of the law and deliberately refrained from complying, then he had the "bad purpose" of specifically intending to violate the law. It is to *this element of specific intent to* which the Supreme Court refers when it uses the term "evil motive", James v. United States, 366 U.S. 213, 221, 81 S. Ct. 1052, 6 L.Ed.2d 246 (1961), and not to the defendant's moral character. United States v. Boardman, 419 F.2d 110, 113–114 (1st Cir. 1969), cert. denied, 397 U.S. 991, 90 S.Ct. 1124, 25 L. Ed.2d 398 (1970). There was no plain error in the district court's charge.

Affirmed.

---

\* *Krosky* has not been followed in other circuits. The cases cited by defendant do not support his claim that the *Krosky*-type charge is the only correct one. United States v. Kurila, 401 F.2d 448 (3d Cir. 1968); Kidd v. United States, 386 F.2d 422 (10th Cir. 1967); Venus v. United States, 287 F.2d 304 (9th Cir. 1960), rev'd on other grounds, 368 U.S. 345, 82 S.Ct. 384, 7 L.Ed.2d 341 (1961); United States v. Hoffman, 137 F.2d 416 (2d Cir. 1943). Two cases cited by defendant either define "wilfulness" similarly to the district court's definition of "knowingly", United States v. Rabb, 394 F.2d 230, 232–233 (3d Cir. 1968), or equate "knowingly" and "wilfully" as signals for the requirement of proof of culpable intent, Graves v. United States, 252 F.2d 878, 882 (9th Cir. 1958).