**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John Walter OSSA, Defendant-Appellant.**

**No. 72-2098.**

United States Court of Appeals, Ninth Circuit.

Dec. 5, 1972.

Rehearing Denied Jan. 9, 1973.

John T. Hansen (argued), of Hansen, Jaffe & Weiss, San Francisco, Cal., for defendant-appellant.

Robert Carey, Asst. U. S. Atty. (argued), F. Steele Langford, Asst. U. S. Atty., James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before DUNIWAY and CARTER, Circuit Judges, and McNICHOLS,* District Judge.

DUNIWAY, Circuit Judge:

Ossa was convicted of refusing to submit to induction into the Armed Forces, 50 U.S.C. App. § 462, and he appeals. We affirm.

1. *The facts.*

Shortly after Ossa registered with Selective Service he sent to the local board his Form 100, in which he claimed to be a conscientious objector. He was then sent a Form 150 for conscientious objectors which he completed and returned on February 18, 1969. In January of 1969, however, Ossa had requested a student deferment, and was therefore classified II–S until October of 1969.

Ossa's II–S classification was not renewed. On July 7, 1970, the board mailed to Ossa a notice to report for an interview on July 16 regarding his conscientious objector claim. This notice was mailed to a Larkspur, California address. Ossa had moved to Fairfax, California, in March of 1970, and to another residence in Fairfax about a month later. He notified the post office of these changes, but not the local board. The notice to report for the interview was not received by Ossa, and was eventually returned to the board. On July 16, 1970, the board classified Ossa I–A, rejecting his conscientious objector claim,

---

* Honorable Ray McNichols, United States District Judge, District of Idaho, sitting by designation.

in part, because he did not attend the interview. On July 20, 1970, the board mailed to Ossa, at the same Larkspur address, a notice of his I–A classification, with information as to his appeal rights. Although Ossa says that he did not receive this notice, it was not returned to the board.

On July 27, 1970, the local board mailed to Ossa, at the same Larkspur address, an order to report for a pre-induction physical on August 14, 1970. Ossa received this order, but did not report. Rather, on August 13, he wrote to the board stating that he was ill, and requested a new date for his pre-induction physical. This letter was received by the board the following day. So far as appears, this letter was merely placed in the file. It was never acted upon by the board. At Ossa's trial, there was undisputed testimony that the clerk of the board decided whether to honor a request such as Ossa's, for a new date for his physical examination. The clerk did not honor the request. Instead, on September 11, 1970, she sent Ossa a notice to report for induction on September 23. On that date Ossa reported, was given a physical examination and was found qualified, but refused to be inducted.

At no time, either in communications to the board, or when he took the physical examination, or at his trial, or on appeal, has Ossa asserted that he is in any way physically disqualified for service in the Armed Forces.

Before us, Ossa makes two attacks on his conviction. He argues that the regulation which permits the board to order a registrant who has failed to report for a physical examination to report for induction without having taken the examination is invalid under Gutknecht v. United States, 1970, 396 U.S. 295, 90 S. Ct. 506, 24 L.Ed.2d 532. He also argues that the order to report for induction is invalid because the regulation invests in the board, not the clerk, a discretion as to whether to order him to report for in-

duction, and that in his case the board never exercised that discretion.

2. *The validity of the regulation.*

■ The pertinent regulation is Selective Service Regulation 1631.7(a) (32 C.F.R. § 1631.7(a) (1971)).[1] This regulation provides, in pertinent part: ". . . when a registrant classified in Class I–A or Class I–A–O has refused or otherwise failed to comply with an order of his local board to report for and submit to an armed forces physical examination, he may be selected and ordered to report for induction even though he has not been found acceptable for service in the Armed Forces and a Statement of Acceptability . . . has not been mailed to him . . . ."

The essence of Ossa's argument is that the regulation punishes those who fail to report for a physical examination by making them subject to induction without taking that examination, a form of punishment forbidden under *Gutknecht.* We do not find that the regulation is punitive.

Congress has conferred on the President complete discretion as to what regulations to adopt dealing with physical disabilities. 50 U.S.C. App. § 456(h). We know of no reason why he could not have chosen to provide for but one physical examination, at the time a registrant reports for induction. Instead, he has provided for a pre-induction examination, and has further established a general rule that a registrant is to be ordered to report for induction only after he has been examined and found acceptable. (Former 32 C.F.R. § 1631.7(b)). In practice, this has created serious problems. By continually failing to report for examination, a registrant could postpone his induction indefinitely, because he could not be ordered to report for induction if he had not been examined and found acceptable. *Cf.* United States v. Fox, 9 Cir., 1971, 454 F.2d

---

1. This provision is now found in Selective Service Regulation 1631.6(a) (32 C.F.R. § 1631.6 (a) (1972)).

593, 595–596. It is true that he could be punished for failing to report for examination, but that did not serve the primary purpose of the system—to select and induct needed manpower into the Armed Forces. The regulation closes this escape hatch to non-cooperating registrants. It is only if the regulation were used to punish such registrants by accelerating their induction that it could fall afoul of *Gutknecht*. On its face, it does not do so.

Moreover, the Director of Selective Service has issued Local Board Memorandum (LBM) 106, which states in pertinent part:

> "Every Class I–A or I–A–O registrant who refuses or otherwise fails to report for and submit to an armed forces physical examination as ordered, shall be ordered to report for induction, provided he has no personal appearance or appeal rights pending, and that he shall not be ordered for induction until his or a higher random sequence number is reached for induction by his local board."

This assures that the registrant will not be called for induction until he would normally be called, and that, when that time comes, he will be called. It is not here claimed that Ossa was not subject to call within the terms of LBM 106 at the time that he was called. We find here no punitive action against Ossa, and therefore reject his first argument.

3. *Failure of the board to exercise its discretion.*

Ossa emphasizes the word "may" in § 1631.7(a) of the regulation, quoted above. He urges that this confers a discretion on the board, and that it is impermissible for the clerk, instead of the board, to exercise that discretion. In support of his argument he offered in evidence a number of files of other registrants with the board, showing that in

their cases, in contrast to Ossa's, the clerk did issue a second order for a pre-induction examination. He relies upon such cases as United States v. Harding, 9 Cir., 1972, 461 F.2d 993 (Executive Secretary's denial of late appeal); United States v. Ford, 1 Cir., 1970, 431 F.2d 1310 (letters concerning registrant's mental disorders not considered by board because forwarded by clerk to AFEES); United States v. Leichtfuss, N.D.Ill., 1971, 331 F.Supp. 723, and United States v. Wallen, D.Minn., 1970, 315 F.Supp. 459 (reliance by appeals board on résumés prepared by clerk). Cf. United States v. Miller, 9 Cir., 1972, 455 F.2d 358.

Ossa also relies upon the State Director's Operation Memorandum of July 25, 1970. In pertinent part, this memorandum provides:

> "Whether a registrant should be excused for his failure to report for physical examination is a matter which is left to the discretion of the local board. It appears, however, that an excuse granted for one flimsy explanation should be sufficient."

This, he argues, clearly shows that the regulation confers a discretion on the board.

We do not accept these arguments. We agree with the government that use of the word "may" "insures that the local board will not order the defendant to report for induction until his lottery number has been reached," and that punitive and accelerated inductions are thereby avoided. As we have already pointed out, LBM 106 confirms this construction of the regulation.

In addition, since the regulation was adopted, each registrant who is ordered to report for a physical examination also receives a notice, a copy of which is set out in the margin.[2] This, too, confirms

2. This notice reads:

**IMPORTANT NOTICE**

On June 15, 1970, the President signed an Executive Order amending the Selective Service Regulations. This Executive Order provides in part that those registrants who fail or refuse to report for and submit to an Armed Forces preinduction examination will be presumed to be qualified for service in the Armed Forces.

the government's construction of the regulation.

 It is true that the State Director's memorandum seems to cut the other way. Such a memorandum, however, is directory, not mandatory. United States v. Kohls, 9 Cir., 1971, 441 F.2d 1076, 1078–1079. We think that, insofar as it is inconsistent with LBM 106, it is invalid.

Ossa argues that had the board properly exercised its discretion, it might have given him a second opportunity for a preinduction physical, and that he, like any other registrant, would then have been afforded the opportunity to appeal administratively any finding of medical acceptability. See Local Board Memorandum 121. However, even assuming that the clerk had usurped the function of the board, Ossa has shown no cognizable prejudice. He makes no claim that had he taken a pre-induction physical he would have been found disqualified. Presumably, the result would have been the same as at his induction physical. Ossa cannot urge prejudice from the alleged denial of a classification that he never claimed. *See, e. g.,* United States v. Gress, 9 Cir., 1972, 464 F.2d 1002. The only prejudice he asserts is that if his pre-induction physical had been rescheduled he would have found out about his I–A classification, and would have done something about it. To this there are several answers. First, he is presumed to have received the notice of classification that was sent to him on July 20, 1970, despite his denial that he received it. United States v. Lee, 9 Cir., 1972, 458 F.2d 32. Second and more important, his claimed failure to know, if true, was caused by his failure to perform his duty to inform his board of his change of address. He cannot claim that sort of prejudice. Finally, we can see no

reason why the board's July 27, 1970 order to report for a physical did not alert Ossa to inquire about his status just as much as, according to his hypothesis, a second notice would have done.

 Nor can Ossa assert prejudice because others were given a second date for a pre-induction physical and he was not. He does not assert that these actions in any way affected his rights.

Our decision in United States v. Duarte, 9 Cir., 1972, 469 F.2d 90, is authority for the validity of the order to report for induction.

Affirmed.

---

This means that when a registrant fails or refuses to report for and submit to preinduction examination, he will be ordered to report for induction when his random sequence number is reached for selection without his acceptability for service in the Armed Forces having been previously determined. His acceptability will be determined at the time he reports for induction, and if found acceptable he will then and there be inducted.