UNITED STATES of America,
Appellee,

v.

Thomas Richard **BOWEN**, Appellant.

No. 13457.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 4, 1969.

Decided Feb. 19, 1970.

**194**

George S. Daly, Jr., Charlotte, N. C. (Court-appointed counsel), for appellant.

Joseph R. Cruciani, Asst. U. S. Atty. (Keith S. Snyder, U. S. Atty., on the brief), for appellee.

Before SOBELOFF, WINTER and CRAVEN, Circuit Judges.

WINTER, Circuit Judge:

Convicted, by a jury, of a wilful failure to report for induction in violation of 50 U.S.C.A. App. § 462 and sentenced to a term of two years, Thomas Richard Bowen appeals. He advances numerous grounds for reversal, most of which we find lacking in merit. However, we do conclude that he is entitled to reversal and a new trial because the district judge erroneously refused to permit defendant to testify on the issue of wilfulness in his failure to report for induction.

– I –

Briefly, defendant's selective service history is as follows:

Defendant registered with his local board on April 12, 1966. He did not claim that he was a conscientious objector. At the time he disclosed that criminal charges were pending against him in New York. On May 11, 1966, he was classified I–S(H). The criminal charges resulted in a conviction of third degree burglary, and he was placed on probation as a youthful offender until January, 1967.

On November 16, 1966, defendant was classified I–Y until February 1, 1967. He was ordered to report for a physical examination on April 19, 1968, but he failed to appear. On June 12, 1968, he was declared delinquent and classified I–A. Defendant appeared at his local board on July 3, 1968, stating that he had been in New York and had not received the notice to appear for a physical examination. He also requested a duplicate registration card, because he claimed that he had lost his original one. He did not appeal his I–A classification.

On July 15, 1968, defendant was ordered to report for induction on July 26, 1968. He failed to report. Thereafter he was interviewed by an agent of the F.B.I. who explained to him the consequences of his failure to report. Defendant said that his failure to report was not wilful, and he promised to communicate with his local board. This he did on December 27, 1968. He was advised to be at his local board on December 30 to be forwarded to the induction station. He was again advised of the consequences of his failure to comply with the local board's orders. Although defendant said he knew the consequences of failure to comply from advice given him by the F.B.I., he did not appear on December 30.

On January 22, 1969, defendant was arrested. Thereafter, counsel communicated with the local board. On January 29, the local board received from defendant a request for the form for a claim of conscientious objection. The form was furnished and completed on January 31. It indicated that defendant was opposed to combatant and non-combatant training and service. Other than this conclusory statement, the form contained little supporting data. Citing only the commandment "Thou shalt not kill" as the basis for his belief, defendant alleged only generally that his belief stemmed from the Bible, although he admitted that his religious training "does not say much" about restricting him from non-combatant service. Defendant claimed no adherence to any church or body of religious views, and he furnished no references to any sources to support his claim. At a later date, he furnished some letters from persons setting forth their belief in his sincerity, but on their face these letters disclosed that the writers had known defendant only a short

time. In a later letter of his own, defendant stated that he believes life is "sacred" and that he tends "to take things I read in the Bible personally— the things that seem to be said to me." He also made some general statements about a common bond between people and his belief that resolution of differences by talk is "more sensible" than resolution by force.

Defendant's local board interviewed him on March 26, 1969. It declined to reopen his classification, and he was so notified. He then sought intervention by the State Headquarters but, after reviewing the file, it, too, declined to intervene.

Defendant's prosecution was based upon his failure to report on or about July 26, 1968.

– II –

■ Defendant's first contention is that he was denied due process of law because he was not given the time prescribed by the applicable regulation in which to complete his initial questionnaire. We find no merit in this argument.

Under 32 C.F.R. § 1621.9(a) a local board is required to mail the initial questionnaire to the registrant, who must return it within ten days. In this case defendant appeared in person at his local board for his initial registration. He was handed the form there, and he filled it out before he left the premises. There is nothing in the record to indicate that defendant wanted, or requested, more time in which to complete the questionnaire. Personal delivery rather than the mailing of the form was neither unfair nor prejudicial to defendant. Presumably, defendant is arguing indirectly that, had he been given ten days in which to complete the form, he might have concluded to claim that he was a conscientious objector at the time of initial registration. The record indicates otherwise. From the date of initial registration until the first claim of conscientious objection a period of twenty-one months elapsed. During this period defendant had many contacts with his local board, yet it is clear he did not even intimate conscientious objection until after his arrest. Thus, there is no factual basis to conclude that ten additional days for reflection would have resulted in a claim of conscientious objection.

Defendant also contends that due process was denied when the local board refused to furnish him with the home address, date of birth, length of service and membership status in the armed forces for each of the members of the local board. This data was requested by defendant's attorney prior to the trial for failure to report. The alleged purpose of the request was to determine whether the board's members met the qualification tests in 50 U.S.C.A. App. § 460(b) (3).

The subject of disclosure is governed by 32 C.F.R. § 1606.62. This regulation provides that the names of board members will be posted at an area available to the public at each board office. The home addresses and other personal data of board members are treated as confidential unless (1) the person to whom such data relates consents to its release or (2) the board chairman determines in writing, after consultation with the members affected, that disclosure would not constitute "clearly unwarranted invasion of his [the board member's] personal privacy." Defendant's counsel was furnished only with the names of the members who participated in defendant's classification. He was advised that the local board members considered the remaining data to be of a personal nature and each had expressed the desire that such information not be released. In an effort to obtain the data, defendant instituted a separate civil action, but the litigation was abortive and failed to result in the disclosure of the information which defendant sought. The record of that case, other than the pleadings, is not part of the record of this case on appeal.

In United States v. Beltran, N.D.Cal. 306 F.Supp. 385, May 6, 1969, it was held that the statutory qualifications for

local board service are jurisdictional in nature, so that the validity of an order of a local board may be attacked on the ground that the members who made it were unqualified. See also Martin v. Neuschel, Civil No. 68–301, E.D.Pa., February 13, 1968, vacated on other grounds, 396 F.2d 759 (3 Cir.1968). From these authorities, defendant argues that since membership qualifications are jurisdictional in nature, once challenged, they become part of the government's *prima facie* case.

■ We need not decide if the qualifications of local board members are jurisdictional in nature; no allegedly jurisdictional defect has yet been shown. We do conclude that a presumption of regularity attaches to the board's order so that the burden of showing factually that board members are not qualified would rest upon the one attacking their qualifications and not upon the government. Whatever we may think of the validity of a regulation which attempts to hide the identity and qualifications of members of a local selective service board, we conclude that the record here is too obscure to present the point which defendant seeks to have us decide.

At a hearing held five days before trial on motions to dismiss the indictment and for a continuance, one of the grounds on which counsel requested a continuance was that he had been unable to get the addresses, ages and other qualifying data of members of the local board. While the court denied the continuance, in colloquy before the ultimate ruling, the district judge first indicated that he would require the information to be furnished without qualification, but later he said that he would require the information to be furnished only if an affidavit were filed indicating that the members were not qualified, and that if an affidavit to this effect were not filed, he would not consider further the question. On the same date, a written motion for the issuance of subpoenas, directed to the members of the local board and its clerk, without the payment of costs, was also filed. There is nothing

in the record to indicate that the formal motion was presented to the district judge or considered by him. The transcript of the trial shows no objection to the failure of the subpoenas to issue, nor does it contain any mention of counsel's desire to interrogate the board members as to their qualifications. The record is also completely silent as to whether the board chairman determined that the disclosure would or would not harm himself and other board members, and would or would not constitute a clearly unwarranted invasion of his or their personal privacy. Although defendant would have had the right to appeal to the Director of Selective Service to obtain disclosure in the event of an adverse determination by the chairman, 32 C.F.R. § 1606.56, the record does not show if such an appeal was attempted and if not, why not.

Under these circumstances, there is not before us the question of whether the board chairman acted under the regulation and, if so, whether he abused his discretion. Nor do we think that there is before us the question of whether the regulation denied due process, assuming that the board chairman concluded not to release the requested information.

■ While we do not decide whether the statutory qualifications for local board service are jurisdictional in nature, two courts have so held. Since this case must be retried, we venture the view that the information which defendant seeks should be obtainable in advance of trial under Rule 16(b), F.R. Crim.P. That rule authorizes a court to order the attorney for the government to permit a defendant to inspect and copy documents (here, personnel records) within the possession, custody or control of the government "upon a showing of materiality to the preparation of his defense and that the request is reasonable." The decisions in Beltran and Martin v. Neuschel, *supra,* would seem to establish materiality, even though at some future date we may decline to follow them. The reasonableness of defendant's request would ap-

pear manifest if defendant establishes that he has sought to elicit the information under §§ 1606.62 and 1606.56 of the Regulations unsuccessfully, or that it was impossible for him to proceed under § 1606.56, and the information which he seeks is known only to the government.

Defendant's third contention is that he was denied due process of law by the local board's failure to grant him an exemption as a conscientious objector, and its failure to allow him the procedural rights attendant upon a reopening of his classification.

After defendant claimed conscientious objector status, his local board, on the suggestion of the state director, met with him and discussed the depth and sincerity of his claims. Following this meeting the board declined to reopen his classification. No right of appeal arises from a failure to reopen a classification. The right arises only upon original classification or reclassification after reopening. 32 C.F.R. §§ 1626.2(a) and 1625.13. Defendant argues that by discussing the merits of his claim the local board waived 32 C.F.R. § 1625.2, which provides that the classification of a registrant shall not be reopened after the local board has issued an order to report for induction "unless the local board first specifically finds that there has been a change in the registrant's status, resulting from circumstances over which the registrant had no control." We relied on the quoted portion of the regulation in United States v. Al-Majied Muhammad, 364 F.2d 223 (4 Cir.1966), where we pointed out that a local board is not required to reopen a case or to rescind its order to report for induction where a registrant has not intimated conscientious objection until after receipt of the order to report. See also United States v. Helm, 386 F.2d 434 (4 Cir.1967).

■■■ *Al-Majied Muhammad* and *Helm* are directly applicable to defendant's case. Miller v. United States, 388 F.2d 973 (9 Cir.1967), held that a letter from state director of selective service to a local board suggesting an interview for a registrant making a late claim of conscientious objection freed the local board from the quoted language of 32 C.F.R. § 1625.2(a). Thus freed, the local board could not dismiss registrant's *prima facie* case by purporting not to reopen his classification. The *Miller* case did not treat the issue of reopening where there has been no *prima facie* showing of entitlement to exemption. An interview to afford defendant an opportunity to remedy the deficiencies in his case does not foreclose a refusal to reopen when, after every opportunity for proof, defendant's claim remains patently frivolous.

– III –

The one contention that we find meritorious is that at trial defendant was deprived of his right to defend himself.

■■■ The essence of the charge against defendant was a wilful failure to report for induction. At trial the defendant was permitted to state that he did not report for induction because he did not want to get into the army; he was not allowed the opportunity to explain why. When defendant was asked if he refused to report wilfully, the prosecutor's objection to the question was sustained, and the court ruled that the question was one solely of law to be determined from the facts. Further interrogation of defendant at this point ceased.

Although the record is replete with evidence of wilfulness on the part of defendant in failing to report for induction, we think that he should not have been deprived of the opportunity to deny it, or to offer any possible explanation for his conduct. In short, while the right to answer the question posed to him may have availed him little, he should not have been denied that right; and his conviction can thus not be allowed to stand.

Although defendant complains that the charge of the district judge was erroneous, confused and prejudicial, he lodged no objection thereto. Since defendant must be tried anew, we do not consider these alleged errors.

Reversed, with new trial.