469 F.2d 1356
 UNITED STATES of America, Plaintiff-Appellee,
v.
Kenneth James BENSON, Defendant-Appellant.
 No. 71-1524
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 15, 1972.
Decided Nov. 28, 1972.
 
 Leonard Karlin, Chicago, Ill., for defendant-appellant.
 James R. Thompson, U. S. Atty., William M. Elsbury, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.
 Before HASTINGS, Senior Circuit Judge, and PELL and STEVENS, Circuit Judges.
 HASTINGS, Senior Circuit Judge.
 
 
 1
 Defendant was convicted, after a bench trial on stipulated facts, of a charge of having violated 50 U.S.C.Appendix Sec. 462 by willfully failing to report for induction as ordered. His appeal raises three questions: (1) Does a criminal charge pending against a Selective Service registrant on his scheduled reporting date excuse his failure to report? (2) Did the local board in this case employ improper procedures in denying defendant's several claims for deferment, thus violating his right to due process and rendering invalid his I-A classification and the induction order based thereon? (3) Did the trial court err in finding that defendant's failure to report was "willful"? We answer each of these questions in the negative and affirm the conviction.
 
 
 2
 On December 3, 1965, defendant, then a high school student, registered with his local board.[1] He was thereafter granted a I-S(H) deferment, at that time the proper classification for a high school student. 32 C.F.R. Sec. 1622.15(a) (1966). In January 1967, defendant, responding to a request from the board, supplied information concerning his then-current status, on the basis of which the board classified him I-A on March 8, 1967. Defendant admits that this was a valid classification at the time. He made no attempt to appeal from the classification within the time allowed by regulation. He reported for a physical examination on June 16, 1967, and at that time informed the military examiners that there were state court charges pending against him as the result of a recent arrest. He further told the examiners that the charges were set for trial on August 26, 1967. The military authorities held up determination of defendant's acceptability for induction until after that date. It does not appear from the record what investigation, if any, they undertook in the meantime. On September 8, 1967, the military examiners informed the board that defendant was then qualified for induction in all respects. A copy of this communication was furnished by the board to defendant.
 
 
 3
 On December 26, 1967, the board ordered defendant to report for induction on the following January 24. Defendant appeared personally at the board's office on January 2, 1968, and requested the form for conscientious objectors. He submitted the completed form on January 8, claiming for the first time the status of conscientious objector and the I-O classification. By authority of the State Director of Selective Service, on January 16 the board postponed defendant's induction until further notice, in order to allow it to consider the application at its next scheduled meeting. At its meeting on April 10, the board determined there had been "[n]o change in the registrant's status resulting from circumstances over which he had no control." Defendant was apprised of the board's unanimous decision by a letter sent to him on April 11. The board received a reply from defendant on April 29, which stated:
 
 
 4
 "I am making a formal request for a personal appearance before the Local Board to discuss my present classification under the Selective Service system, and why my request for a classification of I-O was refused by the Local Board."
 
 
 5
 The board responded on May 1 with a letter informing defendant that he had no procedural right of appearance or appeal. On the same day it ordered him to report for induction on May 14. Defendant replied by letter (received on May 10), once again requesting a personal appearance before the board and advising it that the charges were still pending against him and that he was out on bail. The board on May 13 postponed defendant's induction until further notice, once again on the authority of the State Director. As requested, it also mailed defendant the appropriate application form to volunteer for civilian work. Defendant completed the form and returned it promptly.
 
 
 6
 The board informed defendant on July 11 that it had considered all the information submitted by him and decided unanimously that there had been no change in his status. The board's letter further informed defendant he would receive a notice to report for induction. Defendant responded with letters addressed to the chairman of the board, the state appeal board and the Government appeal agent, all received by the board on August 6, requesting assistance in processing an appeal from the board's denial of his I-O classification. The board replied by letter on August 7 advising defendant that he had "no right of personal appearance or appeal at this time inasmuch as your last Classification Card of 1-A was mailed to you on March 10, 1967." Nevertheless, the board granted defendant a "courtesy interview at the next meeting, which will be in September." It also told defendant how to contact the Government appeal agent.
 
 
 7
 On September 18, defendant received his courtesy interview with the board. The same day he supplied the board with a completed Current Information Questionnaire, indicating that he was "awaiting trail [sic]" and that he was then a full-time student. The minutes of the board show a unanimous determination that there had been "no change in his status resulting from circumstances over which he had no control. Classification not re-opened." The letter informing defendant of this decision also advised him that his application to volunteer for civilian work could not be processed since he had not been classified I-O. At the same time, the board sent defendant's file to the State Director for review and comment. Specifically, the board sought the State Director's assurance that it had handled the case correctly before proceeding further. By letter of September 30, the Deputy State Director returned defendant's file to the board, advising it:
 
 
 8
 "This registrant should be ordered for induction by letter on your next available call. If he has been placed under bond, you should obtain all of the facts and include this information with his physical examination papers when they are forwarded to AFEES [Armed Forces Examining and Entrance Station] at the time of induction."
 
 
 9
 The board sent defendant a letter on October 3. Referring to the Current Information Questionnaire he filed on September 18, the letter stated:
 
 
 10
 "It is noted in Series VI-Court Record, that you were awaiting trail [sic], but entered no offense. Kindly submit the facts in your case for consideration of the local board. This information is necessary to fully determine your status at this time."
 
 
 11
 Defendant replied to this request by letter received October 8, in which he wrote:
 
 
 12
 "The charges which I face are as follows, case I: disorderly counduct [sic], mob action inciting to riot, resisting arrest; case II: inciting to riot, resisting arrest and assaulting a officier [sic]."
 
 
 13
 Defendant also renewed his request that the board take steps to have his "appeal" processed. Finally, defendant included a certificate from the Central YMCA Community College confirming his status as a full-time first-year student. The board replied on October 11 that in its opinion defendant did not qualify for a student deferment because "you were ordered for induction to report on January 24, 1968 at which time you were not in school. Therefore, such information does not warrant re-opening your classification" (emphasis in original). Defendant's file indicates this letter followed a telephone poll of the members of the board.
 
 
 14
 On October 11, the board sent a letter to defendant ordering him to report for induction on October 24, 1968. At its meeting of October 16, the minutes show the new information was considered and the board found no change in defendant's status.[2] By letter of October 16, defendant replied to the letter ordering him to report:
 
 
 15
 "At this time I am serving notice to you that my induction into the U. S. Armed forces cannot take place as mentioned in your letter due the the [sic] dates of trail [sic] in the two (2) criminal cases that I am presently awaiting trail [sic] for. It would be a severe misscarriage [sic] of justice if I were inducted into the Armed forces at this time."
 
 
 16
 Once again defendant renewed his request that his "appeal" be processed.
 
 
 17
 The board responded on October 18 by requesting that defendant "get a letter from your attorney stating the facts of your criminal cases that you are presently awaiting trial for; and that letter should indicate whether or not you are on bond and if you have court dates pending at this time. Kindly take this letter with you" (emphasis in original). The letter reminded defendant that he had no right to appeal.[3]
 
 
 18
 On October 24, defendant failed to report for induction as ordered. His failure to report was brought to the attention of the United States Attorney four days later. On November 19, 1968, defendant wrote to the board as follows:
 
 
 19
 "As you may be well aware of on October 24, 1968. I was scheduled to report to the U. S. Armed forces Induction center located at 615 West Van Buren, 4th floor at 6:30 A. M. As you have probably been notified by the above mentioned Induction Center, that I did not report to the center at the stated time, nor did I report late on the same day. As you and I both are aware of this action leaves me subject to fine and/or imprisonment. "However as stated to you in my previous letters. I feel that in order to have prevented the board and myself from becoming participants in various unjust actions. The only rational course of action left open to me, in light of the posistion [sic] taken by the board, was for me to refuse to report to the Induction center and contact you by mail at some date in the future as I am so doing, in order that we can mediate our differences as sain [sic] and rational men.
 
 
 20
 "In the event that you wish me to elaborate further please feel free to contact me by mail."[4]
 
 
 21
 The board responded that it could take no action because the file had already been forwarded for prosecution.
 
 
 22
 The grand jury indicted defendant on August 21, 1969. In the meantime, defendant attempted to enlist in the Air Force, but was rejected after failing the mental examination on August 11, 1969.
 
 I.
 
 23
 Defendant contends the criminal charges pending against him on his scheduled reporting date excused his failure to report. It appears that defendant was arrested on several charges arising out of a civil rights demonstration on May 19, 1967, and that the charges were dismissed sometime in 1969. Defendant bases his argument on an Army regulation, AR 601-270, which at the time provided:
 
 
 24
 "Men who have criminal charges filed or pending against them alleging a violation of a State, Federal, or territorial statute are unacceptable * * *. Waivers will not be granted in these instances."[5]
 
 
 25
 The same regulation and argument were raised in Nickerson v. United States, 10 Cir., 391 F.2d 760, 763 (1968), cert. denied, 392 U.S. 907, 88 S.Ct. 2061, 20 L. Ed.2d 1366. We agree with the holding in that case that military regulations cannot become applicable until a Selective Service registrant passes into the control of the military authorities. The offense charged in the instant case is a violation of defendant's duty under the Military Selective Service Act of 1967 to obey a lawful order of his local board that he report for induction. That the military, for its own reasons, might possibly or even certainly reject a registrant after he arrives at the induction station can neither logically nor legally obviate his duty to report.
 
 II.
 
 26
 As to defendant's claim that the board deprived him of his constitutional rights by the manner in which it handled his successive requests for deferment and thereby rendered invalid the I-A classification upon which his conviction rests, we think the Selective Service regulations, particularly when read in the light of Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), readily justify the board's conduct. Defendant's I-A classification of March 1967 was admittedly valid when issued. No appeal was taken from that classification during the time permitted by regulation. Defendant contends that the board came under an obligation to reclassify him in class I-Y when it first became aware the criminal charges were pending against him. Eligibility for I-Y, a class which has since been abolished, was governed by 32 C.F.R. Sec. 1622.17 (1967). The regulation mandated inclusion in the class of any registrant not eligible for a lower class who would have been classified as eligible for induction or as a conscientious objector "but for the fact that he is found under applicable physical, mental, and moral standards to be not currently qualified for service in the Armed Forces * * *." The "applicable * * * moral standards" of the regulation are those set by the military. Congress has never enacted and the Selective Service System has never created by regulation a set of moral criteria to be applied in determining eligibility for I-Y. As the facts in this case indicate, the military authorities on September 8, 1967, with knowledge of the existence of the criminal charges, found defendant morally qualified for induction. Once they had done so, the board was under no duty to inquire further, and no basis existed for reopening defendant's classification.
 
 
 27
 It therefore becomes apparent that defendant's I-A classification was still valid on December 26, 1967, the day the board ordered him to report for induction. Thereafter, on January 2, 1968, defendant first suggested that he might have conscientious scruples against serving in the Armed Forces when he requested the form for objectors. The trial court found that the information defendant supplied the board in connection with his application for I-O status was not sufficient to make out a prima facie case of conscientious objection so as to bring into play the then-current decision of this court in United States v. Nordlof, 440 F.2d 840 (1971), judgment vacated, 454 F.2d 739 (1971). Defendant's post-induction order conscientious objector claim is, then, perforce insufficient under the rationale of Ehlert, supra. The board could not have reopened defendant's classification even had it so desired. Defendant's application came after he received an induction order and failed, as a matter of law, to reflect a change in his status "resulting from circumstances over which he had no control." This is the requirement for reopening a classification after an induction order has been issued. 32 C.F.R. Sec. 1625.2 (1972).
 
 
 28
 Since defendant was never entitled to a I-O classification, he was likewise not entitled to have his application as a volunteer for civilian work considered by the board. Defendant argues that 32 C.F.R. Sec. 1660.10 (1968) compelled a local board to consider the application of any registrant who either was classified I-O or claimed that classification. The regulation cannot be read so broadly. The board was not obliged to consider his application because it was clear that he was not eligible for I-O status and that his claim of eligibility could not meet with success.
 
 
 29
 Defendant also contends that he should have received a student deferment after he informed the board on October 8, 1968, that he had become a full-time college student. The board quite correctly held that this change was not a matter beyond defendant's control and did not meet the test of 32 C.F.R. Sec. 1625.2 (1972). Since a valid induction order was outstanding at the time, the board did not err in refusing to reopen defendant's classification.
 
 
 30
 Defendant's last claim of constitutional deprivation in his treatment by the board turns on the fact that it kept him "in limbo" by its several postponements of his reporting date. He points to 32 C.F.R. Sec. 1632.1(a) (1972), which regulation he contends permits postponements of induction orders only to a date certain and in no case beyond 120 days from the original reporting date. The Ninth Circuit was presented with this same question in United States v. Foster, 439 F.2d 29 (1971), and we find its response particularly apt:
 
 
 31
 "Appellant claims that his induction order was invalid because it was postponed more than 120 days. * * * Since, however, every postponement, including those occurring after the 120 day period had run, was granted at appellant's specific request or was due to his actions and all were for his benefit, we feel we would be taking an unnecessarily rigid approach by saying, in effect, that the local board does not have the discretion to aid the registrant by allowing him more time than the regulations specify."
 
 
 32
 Id. at 31 (footnote omitted).
 
 III.
 
 33
 Finally, defendant submits the trial court erred in finding that his failure to report was "willful." Defendant's letter of October 16, 1968, indicated his intention not to report as ordered eight days later, and his letter of November 19, 1968, indicated that his refusal to report had been by design. The transcript of the hearing before the trial court clearly shows defendant stipulated his failure to report had been deliberate, conscious, knowing, not accidental and not inadvertent. This court has held that a registrant's mere statement that he was not "going to report for induction" was sufficient evidence upon which to ground a conviction for willful failure to report. United States v. Kurki, 384 F.2d 905, 907 (1967), cert. denied, 390 U.S. 926, 88 S.Ct. 861, 19 L. Ed.2d 987 (1968). The trial court's finding was proper.
 
 
 34
 For the foregoing reasons, the judgment of conviction is affirmed.
 
 
 35
 Affirmed.
 
 
 
 [1]
 The facts hereinafter set out appear in defendant's Selective Service file, which was introduced in evidence by the Government. They are not disputed
 
 
 [2]
 Any infirmity of procedure involved in the telephone poll which preceded the October 11 letter was cured by the board's action at its meeting of October 16
 
 
 [3]
 The letter actually stated: "Again, we advise you have procedural right of appeal at this time. This was explained in our letter to you 7 Aug 1968." Defendant makes much of what was obviously a typographical error in the omission of the word "no" between "have" and "procedural." Because the letter of August 7, 1968, to which defendant was referred, explained that he had no appeal rights, we are confident that the omission was not detrimental to any of defendant's rights
 
 
 [4]
 It appears from defendant's Selective Service file that from the time he first requested the form for conscientious objectors on January 2, 1968, he was acting with the advice of private counsel
 
 
 [5]
 AR 601-270, p 23 (in effect until Apr. 19, 1971). The moral waiver program of the Armed Forces, with which the regulation deals, has since been changed in several important respects. See AR 601-270, paragraphs 3-8 and 3-9 (effective Apr. 19, 1971)