UNITED STATES of America

v.

**Bruce Ogilvie IRWIN, Appellant.**

No. 76–1359.

United States Court of Appeals, Third Circuit.

Argued Sept. 8, 1976.

Decided Dec. 6, 1976.

John J. Barry, Asst. U. S. Atty., Jonathan L. Goldstein, Brian D. Burns, Newark, N. J., for appellee.

A. Joseph Kane, Kearney, N. J., for appellant.

Before VAN DUSEN, HUNTER and WEIS, Circuit Judges.

JAMES HUNTER, III, Circuit Judge:

This is an appeal from a jury conviction under 50 U.S.C.App. § 462(a) for willfully and knowingly failing to report for military induction. The trial court excluded certain evidence relating to defendant's motives for not reporting and denied defendant's requested charge on "willfully." Finding no reversible error, we affirm.

I.

Bruce Ogilvie Irwin received from his local draft board a letter dated November 7, 1972, ordering him to report for induction on December 8, 1972. A few days after receiving that letter, Irwin was arrested by local police in Bridgewater, New Jersey, for having participated in allegedly disorderly conduct one night in late October, 1972. The morning after his arrest, Irwin was arraigned by Judge Esposito, the municipal court magistrate for Bridgewater Township. The magistrate explained that Irwin would be released on bail and that a notice would be mailed informing him of the date on which he would be required to report to the court. Irwin told the magistrate that he had received his draft notice and had to go into the Army. The magistrate responded "You have to take care of this first;" Irwin inquired, "Well, suppose this doesn't come up before I am scheduled for induc-

tion, that is December 8." Tr. 155. Judge Esposito replied that Irwin would have to take care of the township charge first.[1] In fact, Irwin was not summoned to appear before the magistrate until sometime the following year.

The second relevant event after the receipt of his draft notice was Irwin's attempt to enlist in the U.S. Navy, which occurred sometime during the second half of November 1972. The Navy recruiter explained the procedure for enlisting in the Navy prior to an already scheduled induction by the Army, and advised Irwin that, in light of his induction date of December 8, 1972, Irwin would have to hurry. As it turned out, the Navy recruiter uncovered Irwin's pending criminal charges and advised Irwin that those charges made him unacceptable for enlistment in the Navy. The recruiter did not advise Irwin that the charges nullified his duty to report on his scheduled induction date.

When December 8, 1972, arrived, Irwin did not report for induction. He had not notified his draft board of any reason he might have had for not reporting. Concerned, a clerk from the draft board called Irwin a few days after his failure to appear and asked Irwin why he had not come. Even then Irwin did not explain that he had criminal charges pending against him. Instead Irwin replied he did not have to report because he was told by "Mr. Esposito" [2] that he would have to take care of "the court matter" first, and that he was in "some kind of trouble." Tr. 158. The clerk asked him what kind of trouble, but Irwin

replied that he did not know, that he had forgotten. The clerk made no further inquiries. On June 11, 1973, Irwin was indicted for knowingly and willfully failing and neglecting to appear for induction on December 8, 1972, in violation of 50 U.S.C. App. § 462(a).

The trial court excluded evidence relating to these three incidents—the magistrate's statement, the rejection by the Navy, and the follow-up telephone call by the draft board clerk—ruling that Irwin's motives for not appearing were irrelevant.[3] The jury returned a verdict of guilty; a two year prison sentence was suspended, and Irwin was placed on probation for three years and fined $1500.00.

## II.

To establish a violation of 50 U.S.C.App. § 462(a) for failure to report for induction, the government must show that 1) Irwin received an order to report for induction; [4] and 2) Irwin knowingly failed to report. The precise wording of the Military Selective Service Act of 1967, 50 U.S.C.App. § 462(a) is, in pertinent part:

> Any member of the Selective Service system or any other person charged as herein provided with the duty of carrying out any of the provisions of this title, . . . or the rules or regulations made or directions given thereunder, who shall knowingly fail or neglect to perform such duty . . . shall, upon conviction in any district court of the United States of competent jurisdiction, be punished by imprisonment for not more than five

---

1. We realize that the statement "You have to take care of this first" could be ambiguous: we assume the magistrate meant that Irwin would not be able to avoid his pending criminal charge by joining the army; Irwin may have interpreted the statement to mean that he need not even *report* for the draft, as ordered, until the township charges had been settled. Even if Irwin believed the latter, he made no attempt to inform his draft board of this complication. Had he done so, this suit would in all likelihood never have arisen.

2. There was also a local public defender by the name of Esposito, which may have confused the draft board clerk.

3. The court included in its charge to the jury Mr. Irwin's belief, whatever it may have been, or anything he may have been told by anyone other than his Selective Service Board about whether or not he was obliged to report for induction cannot be considered by you in this case.

4. See, e. g., *United States v. Belgrave*, 484 F.2d 915 (3d Cir. 1973), where this court reversed a conviction because the government had not met its burden of establishing beyond a reasonable doubt that defendant had received actual notice of his order to report for induction. *Id.* at 917.

years or a fine of not more than $10,000, or by both such fine and imprisonment . . . .

50 U.S.C.App. § 462(a).

Irwin's duty was to report for induction on December 8, 1972; his criminal liability arises from having knowingly failed to perform that duty. The indictment charged Irwin with having "knowingly and wilfully failed to appear for [his scheduled] induction." [5] Irwin clearly failed to report for induction, but in deciding whether the trial court erred in excluding evidence bearing on Irwin's reasons for not reporting, we must determine the mental state required in a knowing and willful failure to report for induction.

Legislative history provides no clue to the meaning of "knowingly fail," [6] so we rely on case law under 50 U.S.C.App. § 462(a). As a threshold matter, a knowing and willful failure clearly requires more than mere carelessness or inadvertence. *United States v. Rabb*, 394 F.2d 230 (3d Cir. 1968). Here there is no allegation by Irwin that he forgot to report on December 8, 1972; on the contrary, any evidence concerning the conversations with the magistrate and the Navy recruiter only underscores Irwin's awareness of December 8, 1972, as the date on which he was ordered to report. Despite the trial court's ruling that testimony relating to those conversations would be inadmissible, there were attempts to introduce that testimony, such as the following colloquy:

> Q. Mr. Irwin, . . . did you go down for induction on the 8th of December?
> A. No, I didn't.
> Q. Why not?
> A. Well, because of two reasons. One was because I' was told not to go down.
> Q. By whom, sir?
> A. By the judge in Bridgewater Township.
> The Court: Strike it out. The jury will disregard the answer.
> Q. Was there another reason?
> A. Because the Navy recruiter refused me.
>
> . . . . .
>
> The Court: Objection sustained. The answer will be stricken. The jury will disregard it.

Tr. 140–41.

This exchange supports our view that Irwin was seeking to introduce evidence of his motives: he had not failed to report accidentally or inadvertently—he had reasons for not reporting.

A person's motives for not reporting for induction are irrelevant in a conviction under 50 U.S.C.App. § 462(a). *United States v. Boardman*,[7] 419 F.2d 110 (1st Cir. 1969), *cert. denied*, 397 U.S. 991, 90 S.Ct. 1124, 25 L.Ed.2d 398 (1970), *cited approv-*

---

**5.** The statute requires only a knowing failure, but the indictment and the charge to the jury both refer to "willfully" as well as "knowingly."

**6.** *See United States v. Figurell*, 462 F.2d 1080, 1087 (3d Cir. 1972) (Aldisert, J., dissenting).

**7.** In *Boardman*, a case also involving a knowing and willful failure to report for induction, the trial court instructed the jury as follows:

> Motive is that which tempts, induces or moves a person to commit a crime. Intent is the purpose or mental state with which the person does the act. Now, members of the jury, motive, no matter how laudable or praiseworthy that motive may be, cannot negative a specificate [sic] intent to commit a crime. . . . Where a person has a specific intent to bring about a result which the law seeks to prevent, what induces him to act, his motive, is immaterial.

*Id.* at 113–14.
*See also United States v. Couming*, 445 F.2d 555, 556–57 (1st Cir.), *cert. denied*, 404 U.S. 949, 92 S.Ct. 291, 30 L.Ed.2d 266 (1971).

In *United States v. Bowen*, 421 F.2d 193 (4th Cir. 1970), the Fourth Circuit did reverse the trial court for its refusal to allow defendant to explain further his reasons for not reporting for induction. Defendant had been asked why he did not report; he answered that he did not want to be in the army. He was not allowed to explain why he did not want to be in the army. The case has not been followed.

As Wigmore notes, testimony concerning a person's intent or motive is receivable "only on the assumption *that the intent or motive is a fact permissible to be proved under the substantive law* involved in the case. . . . Hence, if for any reason of substantive law the

*ingly in United States v. Malinowski,*[8] 472 F.2d 850 (3d Cir.), *cert. denied,* 411 U.S. 970, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973). All that is necessary is proof that the defendant's failure to report was deliberate, conscious, knowing, not accidental and not inadvertent. *United States v. Benson,* 469 F.2d 1356, 1362 (7th Cir. 1972). Indeed, the court in *Benson* remarked that a mere statement by a registrant that he was not going to report for induction would be sufficient to support a criminal conviction. *Id.* at 1362. In *United States v. Rabb, supra,* we held that in order to prove a violation of 50 U.S.C.App. § 462(a) the government "must establish knowledge of the legal obligation and voluntary action or omission with the purpose of failing to perform such obligation," *Id.* at 233.

■ In this case, the very evidence that was excluded as irrelevant insofar as it related to Irwin's good faith motives for not reporting would also have been cogent evidence to reinforce the jury's finding that Irwin's failure to report was deliberate. When Irwin attempted to enlist in the Navy, after receiving his order to report for induction into the Army, he demonstrated that he had not in fact believed that the local magistrate's remark, "You have to take care of this first," meant Irwin was relieved from his duty to report for his scheduled induction. At trial, Irwin testified

> I went to my local Navy recruiter in Somerville and he asked me questions, and *I told him that I was scheduled to go into the Army, I got drafted, got my draft notice,* and he said "Well, when were you supposed to go in?" and *I told him "December 8"* and this was pretty— this was like the second half of November. He said "Well, you have to get all your papers, your testing and your papers all squared away and signed ten days before December 8, so he said he—he

instructed me—he made a phone call to New Brunswick and instructed me to go right down there, so I did. I went down there and I talked to an officer down there.

Tr. 157 (emphasis supplied). This conversation bars Irwin from credibly claiming that he thought the magistrate's comments relieved him from the duty to report on December 8 for induction. Thus we find that the exclusion of this evidence, even if it had been error, did not create substantial prejudice.

Appellant argues in addition to the above evidentiary claims that the trial judge erred in refusing to include "bad purpose" or "evil motive" in his instruction on willfulness. We are not persuaded that one of those phrases must be included. In *United States v. Bishop,* 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973), the Supreme Court, in holding that tax misdemeanors as well as tax felonies require proof of willfulness, described "willfully" as a "voluntary, intentional violation of a known legal duty." *Id.* at 360, 93 S.Ct. at 2017. There is no requirement that the phrase "bad purpose" or "evil motive" be included. As we said in *United States v. Greenlee,* 517 F.2d 899 (3d Cir.), *cert. denied* 423 U.S. 985, 96 S.Ct. 391, 46 L.Ed.2d 301 (1975), when the trial court did include "bad purpose"

> the use of terms such as "bad purpose" does not imply that the government must prove more than that the defendant acted with a guilty mind, i. e., voluntarily and with the deliberate intent to violate the law. We think the instruction here adequately conveyed the concept that *liability can be based . . . only on a "specific intent to do something which the law forbids. . . ."*

*Id.* at 904 (emphasis supplied).

■ The Supreme Court, writing per curiam in a recent tax evasion case, *United*

---

person's intent or motive is not provable at all, it is not provable by such testimony." 2 J. Wigmore, Evidence § 581, p. 721 (3d ed. 1940).

See also *United States v. Pomponio,* —— U.S. ——, ——, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976) (per curiam), where in a willful tax eva-

sion case the Court upheld a charge that "[g]ood motive alone is never a defense where the act done or omitted is a crime."

**8.** The defendant in *Malinowski* was charged with willful evasion of federal income taxes.

States v. Pomponio, —— U.S. ——, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976), reversed the Fourth Circuit's holding that "willfully" requires a finding of bad purpose or evil motive. The Supreme Court held that

> [i]n so holding, the Court of Appeals incorrectly assumed that the reference to an "evil motive" in *United States v. Bishop,* and prior cases meant something more than the specific intent to violate the law . . . .
>
> . . . *We did not,* however, *hold that the term [*"willfully"*] requires proof of any motive other than an intentional violation of a known legal duty.* . . .
>
> . . . . .
>
> . . . On the contrary, as the other courts of appeals to consider the question have recognized, willfulness in this context *simply means a voluntary, intentional violation of a known legal duty.* United States v. Pohlman, 522 F.2d 974, 977 (CA8 1975) (en banc), cert. denied, 423 U.S. 1049, 96 S.Ct. 776, 46 L.Ed.2d 638; *United States v. McCorkle,* 511 F.2d 482, 484–485 (CA7 1975) (en banc), cert. denied, 423 U.S. 826, 96 S.Ct. 43, 46 L.Ed.2d 43; *United States v. Greenlee,* 517 F.2d 899, 904 (CA3 1975), cert. denied, 423 U.S. 985, 96 S.Ct. 391, 46 L.Ed.2d 301; *United States v. Hawk,* 497 F.2d 365, 366–369 (CA9 1974), cert. denied, 419 U.S. 838, 95 S.Ct. 67, 42 L.Ed.2d 65.

*Id.* at ——, 97 S.Ct. at 23–24 (emphasis supplied). In the case *sub judice,* the court charged the jury

> [a]n act is done knowingly, if it is done voluntarily and intentionally and not because of mistake or accident or other innocent reason. *An act is done wilfully if it is done voluntarily and intentionally and with specific intent either to do something which the law forbids or to fail to do something which the law requires.*

Tr. 176 (emphasis supplied).[9] We find no error in that charge.

**9.** Compare the "willful" charge we reversed in *Rabb,* which added "[t]he word is also employed to characterize the thing done without ground for believing it is lawful or conduct

### III.

Any claim that Irwin was excused from reporting because he had pending against him a criminal charge is easily disposed of. In an extreme case where the registrant was not just awaiting trial, but was already in prison at the time he was ordered to report, the Tenth Circuit confirmed his conviction under 50 U.S.C.App. § 462, saying that being in jail was no excuse, he could have written to the draft board, since he was allowed one letter per day. *United States v. Ebey,* 424 F.2d 376, 378 (10th Cir. 1970).

A belief that one is unacceptable to the army is no defense to a charge of knowingly failing to report for induction. *See, e. g., United States v. Shriver,* 473 F.2d 436, 437 (3d Cir. 1973); *United States v. Medina,* 462 F.2d 1110, 1111 (10th Cir. 1972); and *United States v. Goodman,* 439 F.2d 810 (9th Cir.), cert. denied 404 U.S. 832, 92 S.Ct. 77, 30 L.Ed.2d 6 (1971). Nor is the fact that charges are pending against one. *United States v. Benson,* 469 F.2d 1356 (7th Cir. 1972); *Nickerson v. United States,* 391 F.2d 760 (10th Cir.), cert. denied 392 U.S. 907, 88 S.Ct. 2061, 20 L.Ed.2d 1366 (1968); and *Doty v. United States,* 218 F.2d 93 (8th Cir. 1955).

Likewise, any belief Irwin may have had that he did not have to obey the order to report is no defense. Even when registrants relied on specific advice from their attorneys that they need not comply with an order to report for induction, courts have not recognized this reliance as a defense. As stated by the Second Circuit in *United States v. Mercado,* 478 F.2d 1108 (2d Cir. 1973), this is just another application of

> the settled rule that an erroneous belief that an induction order is invalid, even if based on the advice of counsel, is not a defense to a prosecution for refusing induction, and that *one who refuses induction on the basis of such a belief acts at his peril.*

marked by careless disregard, whether or not one has the right so to act." *United States v. Rabb,* 394 F.2d 230, 232 (3d Cir. 1968).

*Id.* at 1111 (emphasis supplied). The First, Fifth and Ninth Circuits have also rejected such a defense in induction cases. *United States v. Steiner,* 469 F.2d 760 (5th Cir. 1972); *United States v. Jacques,* 463 F.2d 653 (1st Cir. 1972); and *United States v. Wood,* 446 F.2d 505 (9th Cir. 1971).

### IV.

We find no error in the exclusion of the disputed evidence or in the court's charge on "willfulness." We have considered the other contentions raised by the defendant and find them without merit. The judgment of the trial court will be affirmed.

VAN DUSEN, Circuit Judge (dissenting):

I respectfully dissent from the majority's holding that the district court committed no error in excluding the defendant's testimony explaining his failure to report for induction on December 8, 1972, in accordance with the order of his local Selective Service Board.[1] The testimony was excluded both by striking the testimony quoted in the majority opinion at page 1051 and by rejecting the offer of proof described in note 1 of this dissent.

As the majority opinion indicates at page 1051, a unanimous panel of this court said in *United States v. Rabb,* 394 F.2d 230, 231–33, in construing 50 U.S.C.App. § 462(a):

"The federal cases applying this statute to a defendant who is charged with knowingly failing or neglecting to report for induction at the time and place described in an induction order have held that the Government must prove a culpable, criminal intent. In *Graves v. United States,* 252 F.2d 878, 881 (9th Cir. 1958), the court stated that the Government must prove that the accused 'willfully neglected to exercise * * * [his] duty.' The 'Manual on Uniform Jury Instructions in Federal Criminal Cases' of the United States District Court for the Northern District of Illinois, 33 F.R.D.

---

1. When the defendant was asked why he did not report for induction on December 8, 1972, the following testimony given by him was stricken by the trial judge (N.T. 140–41):

 "A. Well, because of two reasons. One was I was told not to go down by . . . the judge in Bridgewater Township.

 . . . . .

 "Q. Was there another reason?
 "A. Because the Navy recruiter refused me."

 Thereafter the trial judge granted defense counsel the opportunity to make an offer of proof by questioning the defendant under oath out of the presence of the jury concerning these two reasons given by the defendant for not reporting for induction on December 8, 1972 (N.T. 150–59).

 The defendant testified that in October 1972, he and some friends had been told to move on by a policeman when they were congregating in a public place in Bridgewater Township and he had run away from the policeman. He was subsequently charged with loitering and resisting arrest (see Exhibits D–3 and D–4) and a warrant for his arrest on the resisting arrest misdemeanor charge was served on him at the police station. Judge Esposito told him at the arraignment (N.T. 155):

 ". . . 'I will continue your bail on personal recognizance' and that when you get your notice—you know—get a notice through the mail when to report to the court. I have to report, and I informed him that I have to go into service, into the Army. I have got my draft notice and he said to me that you have to take care of this matter first, and I said 'Well, suppose this doesn't come up before I am scheduled for induction, that is December 8,' and he said 'You have to take care of this first', so I said 'Okay' and then I never got . . . any notice to go to Court. . . . until [1973]."

 Ultimately he was indicted in 1973 for resisting arrest.

 Also, he testified that when he tried to enlist in the Navy in November 1972, he was told by the Navy recruiter "you have a court case coming up and . . . we can't accept you into the Navy" (N.T. 158).

 When he was called by the Clerk of the Draft Board, who inquired why he did not report, he told her "I didn't have to because I was told by Mr. Esposito that I had to take care of the court matter first and that I was in some kind of trouble . . ." (N.T. 158). This offer of proof was denied by the trial judge (N.T. 159).

529 (1963), contains this language at 553 (§ 4.06): [2]

'The word "wilfully" as used in the crime charged means that the act (or omission) was committed (or omitted) by defendant voluntarily, with knowledge that it was prohibited by law, and with the purpose of violating the law, and not by mistake, accident or in good faith.'

. . . . .

"Wilfulness is a state of mind in which a defendant is fully aware of his obligations to comply with the order for induction. Wilfulness requires an intention, rather than an inadvertent failure, to report on the defendant's part.

. . . . .

"This language in *United States v. Vitiello*, 363 F.2d 240, 243 (3d Cir. 1963), is equally applicable to this record:

'It * * * was error * * * to instruct the jury that it might find "willfulness" * * * in conduct characterized by merely careless disregard of legal obligation or in acts that were merely capricious or not justified by any reasonable belief in their legality.'

"In that case, the court said at page 242:

'Instructions which define an act as willful when done "without ground for believing it is lawful", or when "marked by careless disregard whether or not one has the right so to act", have been rejected by this court as improper dilutions of the scienter required by section 7203. [Citing cases.]

'Our affirmative statements of the meaning of "willfulness" in section 7203 or its predecessor clearly exclude any type of carelessness or negligence, however inexcusable.'

"The Government must establish knowledge of the legal obligation and voluntary action or omission with the purpose of failing to perform such obligation.

"2 See, also, Hon. William C. Mathes, 'Jury Instructions and Forms for Federal Criminal Cases,' Section 7.11, 27 F.R.D. 39, 93 (1961), where this language is used:

'A failure to act is "wilfully" done, if done voluntarily and purposely, and with the specific intent to fail to do what the law requires to be done; that is to say, with bad purpose either to disobey or to disregard the law.' " [2]

(Footnote 1 omitted.)

The indictment charged that "on or about the 8th day of December, 1972 . . . [the defendant] being required by law under a written order dated November 7, 1972 . . . to report for induction . . . on December 8, 1972, knowingly and willfully failed and neglected to appear for such induction [in violation of 50 U.S.C. § 462]." The jury found the defendant guilty of the above charge in the indictment.[3]

Wigmore has thoroughly demolished the position adopted in the past by some courts that a party could not testify to his own intent or state of mind, pointing out that only one United States jurisdiction still adopts this view. See 2 Wigmore on Evidence § 581, page 714 (3d ed. 1940), where decisions of the United States Supreme Court and of the United States Courts of Appeals are cited in note 3, and the pocket part. In *Crawford v. United States*, 212 U.S. 183, 205, 29 S.Ct. 260, 268, 53 L.Ed. 465 (1909), the Court said:

"There may have been testimony some time during the trial, from which inferences might possibly have been drawn as to the motive or intent with which [the defendant acted] but, instead of testimony from which such inferences might have been drawn, the defendant was entitled to state directly on oath to the jury what that intention was, and what were the motives which induced him to [act].

"It is hardly possible to imagine a case where greater care was necessary in re-

2. This same instruction is repeated in 1 Devitt & Blackmar, Federal Jury Practice and Instructions (2d ed. 1970), § 16.14. See also § 16.13 and § 51.13 referring to § 16.13.

3. It would appear that, where the Government charges a defendant with willfulness, it should not be able to rely on proofs which fail to show such a state of mind without at least amending the indictment before a verdict so that the defendant has some notice of the charge which he is called upon to refute.

gard to the exclusion of proper and admissible evidence than in the case before us. As we have said, it was entirely possible that the jury might believe . . . that the defendant was . . . perfectly innocent. No material and proper evidence upon that issue should have been excluded, and the error committed was not, in our opinion, clearly shown to have been harmless."

It is significant that during the course of its deliberations the jury sent the trial judge a message concerning testimony given by the defendant that morning[4] and the "judge's instruction relating to willfully failed" (N.T. 182). The judge repeated his charge on willfulness (N.T. 183) and the foreman of the jury asked him to reread that charge a third time (N.T. 185). Hence, the record makes clear that the jury was troubled concerning the Government's proof of the requisite state of mind of the defendant beyond a reasonable doubt.

In *United States v. Bowen*, 421 F.2d 193, 197 (4th Cir. 1970), the court made clear that a defendant charged with a willful failure to report for induction is entitled to offer evidence of his state of mind in performing the alleged criminal act or omission, using this language at page 197:

"The one contention that we find meritorious is that at trial defendant was deprived of his right to defend himself.

"The essence of the charge against defendant was a wilful failure to report for induction. At trial the defendant was permitted to state that he did not report for induction because he did not want to get into the army; he was not allowed the opportunity to explain why. When defendant was asked if he refused to report wilfully, the prosecutor's objection to the question was sustained, and the court ruled that the question was one solely of law to be determined from the facts. Further interrogation of defendant at this point ceased.

"Although the record is replete with evidence of wilfulness on the part of defendant in failing to report for induction, we think that he should not have been deprived of the opportunity to deny it, or to offer any possible explanation for his conduct. In short, while the right to answer the question posed to him may have availed him little, he should not have been denied that right; and his conviction can thus not be allowed to stand."[5]

The majority opinion itself concedes in footnote 1 that the statements made to the defendant by the state judge could have affected his mental state on the date that he failed to appear for induction, using this language:

"1. *We realize that the statement 'You have to take care of this first' could be ambiguous: we assume the magistrate meant* that Irwin would not be able to avoid his pending criminal charge by joining the army; *Irwin may have interpreted the statement to mean that he need not even report for the draft, as ordered, until the township charges had been settled.*"[6] (Emphasis supplied.)

---

4. The date was October 23, 1975, the second day of a two-day trial.

5. I do not agree with the second paragraph of footnote 7 of the majority, attempting to brush aside the *Bowen* case with the comment that "the case has not been followed" (majority opinion at p. 1051), because the right of a defendant to testify as to his intent or reasons for action at the time of an alleged criminal act or omission has been so well established as a requirement of due process in criminal cases that it is infrequently an issue on appeal. See text above at pages 1055–1056. In the same footnote, the majority seems to suggest by its citation to 2 Wigmore § 581, p. 721, that intent is not a necessary element of 50 U.S.C.App. § 462(a). This is not the case, as the majority

accurately indicates. See pages 1051–1052, majority opinion, and pages 1058–1059 below.

6. The footnote also indicates that if the defendant had informed his Draft Board that he was relying on the statement of the state judge, "this suit would in all likelihood never have arisen." I find nothing in the record to support such an inference. The evidence ((Selective Service System Report of Information, dated December 18, 1972 (SS Form 119) Exhibit G–1)), shows that the defendant did tell the Clerk of the Draft Board, when she called him after December 8 for an explanation, that he was told "that he didn't have to [report for induction on the 8th of December]." Although he did not apparently refer to a judge as the source of his information, I note that under the opinions of Judge Freedman in *United States v.*

In spite of this concession and the burden on the prosecution to prove beyond a reasonable doubt that defendant failed to report for induction voluntarily and with knowledge that his omission was prohibited by law and with the purpose of violating the law (see page 1054 above), the trial judge charged the jury (N.T. 178):

> Turner, 421 F.2d 1251 (3d Cir. 1970), and Judge Maris in *United States v. Craig*, 207 F.2d 888 (3d Cir. 1953), it appears unlikely that Irwin would have had a trial in this case. These cases hold that the Board and its personnel should not treat registrants as adversaries with counsel but should affirmatively try to straighten out information secured from the registrant where it is equivocal. Confusion arose here because the state court judge was named Esposito and a public defender had the same name. The defendant thought the Draft Board Clerk was referring to Judge Esposito when she asked him "did Mr. Esposito (Public Defender) have him in his office" (see SS Form 119 above).

7. Defense counsel, at the conclusion of the charge, objected to this instruction and to the failure of the trial judge to permit the jury to receive Form 119, described in note 6, or the previously excluded evidence (N.T. 181). Defense counsel objected to this ruling of the trial judge at N.T. 119 throughout the trial:

> ". . . the Court has concluded that evidence of what the defendant it is presumed will say he was told by the Municipal Magistrate or by the recruiting [officer] cannot be received in evidence and that neither item nor the fact of his arrest and possible unacceptability for induction constitute a defense on the question of guilt or innocence of the charge of failing to report for induction. These are matters which are appropriate for a court to take into account on sentence and do not go to the issue on trial here."

Both of the trial judge's statements were incorrect as a matter of law. See 2 Wigmore § 242, pp. 38–39, which has the following wording:

> "§ 242. General Principle. The state of mind which accompanies an act is often of legal consequence as forming an ingredient necessary for the attachment of certain consequences.
>
> "(1) *Criminal Intent.* The state of mind accompanying a forbidden act is frequently an element material to make the act a crime.
>
> ". . . This state of mind is also to be distinguished from design or plan, which, as already noted . . . is a purpose or aim, considered with reference to its future fulfilment.
>
> "The notion of Intent, in crimes, may be also, in a broad sense, that of ultimate purpose or object, but it is regarded simply as a state of mind co-existing with the act, and is

"Mr. Irwin's belief, whatever it may have been, or anything he may have been told by anyone other than his Selective Service Board about whether or not he was obliged to report for induction cannot be considered by you in this case." [7]

Defendant contends the fact-finder can infer the intent with which he failed and

> of a conglomerate nature peculiar to itself. . . . The idea of criminal Intent, then, usually partakes of deliberateness, knowledge, object, and the like; its absence is often indicated by the ideas of mistake, good faith, reasonable belief, and the like. So far as evidence of it is concerned, the evidence of emotion, of knowledge, or of design has a bearing only so far as emotion, or knowledge, or design enter by the criminal law as constituents of criminal Intent. In other words, there is no special evidence of Intent (with the exception to be mentioned) apart from evidence of Emotion, of Knowledge, of Design. If those elements affect criminal Intent (as they usually do), then whatever evidence would serve to prove those elements would be receivable, but no new or peculiar principle of evidence would be involved. . . .
>
> "There is, however, one element in Intent which is distinct from any of those above, and may thus have to be shown by different evidence. This is the element of deliberateness or wilfulness,—the *negative of inadvertence, accident.* Thus, one who incorrectly writes the addition of a column of figures may do so inadvertently or intentionally; one who knocks over a lamp and sets fire to a house may do so inadvertently or deliberately. This element is distinct from that of ignorance, or mistake through ignorance (*i. e.*, the absence of knowledge). For instance, one who utters a counterfeit bill may have known it to be counterfeit, but may pay it out by inadvertence, having drawn from the wrong part of his pocket-book. So, on the other hand, one who sells tainted milk does not sell it by accident, though he is ignorant of its bad quality. In other words, one may lack knowledge and yet act deliberately, or one may have knowledge and yet act inadvertently.
>
> "Thus, this distinct element in criminal Intent consists not alone in the voluntary movement of the muscles (*i. e.* in action), nor yet in a knowledge of the nature of an act, but in the combination of the two,—*the specific will to act, i. e.* the volition exercised with conscious reference to *whatever knowledge the actor has* on the subject of the act.
>
> "We do not necessarily show this in showing knowledge; and, conversely, we may find this conceded and still have to show criminal knowledge."
>
> (Footnote omitted.)

See also *id.* § 302.

neglected to report for induction on December 8 from the statements of the state court judge and the recruiting officer to him.[8] These conversations may have had an impact on the intent with which Irwin failed to report for induction. Whether or not this impact was sufficient to constitute a defense to the criminal charge was a matter to be inferred by the jury from all the facts and circumstances which would reasonably show his state of mind. See *Morissette v. United States*, 342 U.S. 246, 274–76, 72 S.Ct. 240, 96 L.Ed. 288 (1952). It is true that relevancy is a question within the broad discretion of the trial judge to decide. In this case the defendant's intent was the only issue and the question was a close one. Under these circumstances, the jury was entitled to have all facts before it which reasonably bore on the state of the defendant's mind.

**8.** Such state of mind was also shown by defendant's statement to the Draft Board Clerk on December 18 (see note 6 above).

**9.** The standard federal jury instructions state that "the motive of the accused is immaterial *except insofar as evidence of motive may aid in determination of state of mind or intent*" (emphasis supplied). See 1 Devitt & Blackmar § 13.05, p. 276 (2d ed. 1970). Dean Wigmore has clearly pointed out in his discussion of motive that "conceiving an emotion . . ., as a probability of appropriate ensuing action, it is *always relevant* . . ." (emphasis in original). 1 Wigmore § 118, p. 558, see also §§ 117 and 119; 2 Wigmore §§ 244, 245, 300 & 386.

The decisions cited in Part III of the majority opinion do not hold that a trial judge may reject portions of a defendant's testimony which would have established his reasons for a good faith failure to report for induction and may have negated the "intent" element of § 462(a). Most of the cases cited are concerned with the defendants' intent under § 462(a), but only in terms of whether there was sufficient evidence on the record to support the verdict. See, *e. g., United States v. Ebey*, 424 F.2d 376 (10th Cir. 1970). In most of the cases cited by the majority, it appears that the defendants were allowed to testify as to their honest belief in the invalidity of the induction or their reasons for failure to appear. See, *e. g., United States v. Goodman*, 439 F.2d 810 (9th Cir.), *cert. denied*, 404 U.S. 832, 92 S.Ct. 77, 30 L.Ed.2d 61 (1971) (attorney allowed to testify as to honest belief he was medically disqualified and induction order was invalid).

The majority's analysis that the exclusion of the evidence offered by defendant is justified by the alleged rule that "motives for not reporting for induction are irrelevant" (page 1051 of opinion) seems to me incorrect on principle[9] and inconsistent with this court's holding that issues not raised in the district court may not be considered on appeal, particularly in a case such as this where an instruction on this point, as stated in 1 Devitt & Blackmar § 13.05, could so easily have been given to the jury if either party had requested it in the district court.[10]

The majority's reliance upon *United States v. Boardman*, 419 F.2d 110 (1st Cir. 1969), and *United States v. Malinowski*, 472 F.2d 850 (3d Cir. 1973) (a federal tax case), relied on by appellant, are inapplicable to the facts of this case. In both cases it is evident that the defendants were permitted

While rejecting the defense of a "good faith belief" on the facts of the case then before them, several courts, however, noted or suggested the possibility of such defense in an appropriate case. See, *e. g., United States v. Mercado*, 478 F.2d 1108, 1111 (2d Cir. 1973); *cf. United States v. Medina*, 462 F.2d 1110, 1112 (10th Cir. 1972). In two cases, the defendants were allowed to testify that they had talked to a recruiter. See *Medina, supra* at 1111; *Ebey, supra* at 377.

The majority contends that the defendant's conversation with the Navy recruiter "bars [him] from credibly claiming that he thought the magistrate's comments relieved him from the duty to report . . . ." (majority opinion at 1052. An equally viable view is that the recruiter's statements reinforced a belief by the defendant that the magistrate's order lawfully relieved him of the duty to report until the state criminal action had been settled. This observation emphasizes my conclusion that these statements were facts that should have been before the jury as part of the pattern in the fabric of circumstances which could reasonably be considered to show his state of mind. See *Morissette, supra*. If the defendant was not truthful in his alleged belief that the order to report was postponed due to the state criminal charge, this was a matter to be established by the adversary process of cross-examination. See, *e. g.,* Advisory Committee's Note to F.R. Evid. 611(b) and authorities cited therein.

**10.** *United States v. Dansker*, 537 F.2d 40, 64 (3d Cir. 1976).

to testify concerning their beliefs or motives, see *Malinowski* at 855 and *Boardman* at 114; thus, the precise issue in this case was not before the court in either of those cases. Second—and most important—the legal question in those cases did not concern a contention by the defendant that he misunderstood what the law required, thus negating the element of specific intent. Rather, the question before the court in both cases was whether the statutory element of "willfullness" mandated that the prosecution prove not only that the defendants acted with the knowledge they were breaching the statute but also that they did so with a "bad or evil purpose." See also *United States v. Pomponio,* —— U.S. ——, ——, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976) (per curiam).[11]

For the foregoing reasons, I would reverse the judgment of the district court and remand the case for a new trial.

11. The defendant would not have committed a voluntary, intentional violation of a known legal duty if he believed he had no duty to report until he had taken care of the pending state charge, as he testified outside of the presence of the jury as set forth in note 1 above. The jury was never permitted to hear this testimony, even though the defendant was entitled to have the jury determine his intent at the time of failing to report.